FARMERS' LOAN & TRUST CO. v. NORTHERN PAC. R. CO. et al.

(Circuit Court, E. D. Wisconsin. February 21, 1895.)

1. EQUITY—PARTIES—TRUSTEE AND CESTUI QUE TRUST.

The rule that courts can deal with bondholders only through their trustees is a rule of convenience, proceeding upon the assumption that the cestuis que trustent are fully and fairly represented by such trustees; and if it appears that the trustees refuse or neglect to act, or stand in a hostile position, or a position prejudicial to the rights of the cestuis que trustent, such rule is set aside, and the cestuis que trustent admitted to represent their rights.

2. SAME—TRUSTEE REPRESENTING DIVERSE INTERESTS.

The N. R. Co. was the owner of an extensive railway system, upon which there were numerous mortgages, covering parts of such system and tributary roads controlled by the N. R. Co., and three so-called "general mortgages" and a consolidated mortgage, each covering substantially the whole property of the N. R. Co., but with some exceptions in the case of each mortgage, there being also some question as to precisely what property was covered by such mortgages. The F. Trust Co., the trustee of the second and third general mortgages and of the consolidated mortgage, and also of many of the divisional mortgages and mortgages on subordinate roads, together with certain stockholders and creditors, brought a suit to marshal all the assets of the company, ascertain the various liens, and decree the rights of the several parties. Subsequently, it brought a suit to have an account taken of the bonds under the second and third consolidated mortgages, to have their liens declared, and for foreclosure of the second general mortgage. These two suits were consolidated. Certain committees, representing holders of the second and third general mortgage bonds and of the consolidated mortgage bonds, petitioned to be made parties, alleging that the position of the F. Trust Co. was inconsistent; that the interests of its several cestuis que trustent were different, and, in certain respects, hostile to one another; and that they should be permitted to intervene to protect their several rights and claims. *Held* that, in view of probable or possible conflicts which might arise between the several interests represented by the trustee, a representative of each interest should be admitted as a party to the suit to protect the same.

3. SAME—RESTRICTION ON RIGHT OF BONDHOLDER TO INSTITUTE SUIT.

The second and third general mortgages each contained a provision that no holder of a bond should have the right to institute a suit for foreclosure of the mortgage or other remedy thereon, except after request to and refusal by the trustee to act. Another provision permitted the removal of the trustee by a majority of the bondholders. *Held*, that neither provision limited the power of a court of equity to permit the intervention of bondholders for the protection of their rights, when it was otherwise just and proper to permit them to do so.

This was a suit by the Farmers' Loan & Trust Company against the Northern Pacific Railroad Company for the foreclosure of a mortgage. Certain bondholders petitioned to be made parties.

Turner, McClure & Rolston and Winkler, Flanders, Smith, Bottum & Vilas, for complainant.

M. H. Cardozo, Van Dyke & Van Dyke, and John M. Butler, for Johnston Livingston and others.

Samuel B. Clarke, for Charles B. Van Nostrand.

Quarles, Spence & Quarles, for Edward D. Adams and others.

JENKINS, Circuit Judge. A committee, of which Mr. Johnston Livingston is chairman, claiming to represent holders of bonds secured by the general second mortgage of the defendant company, has petitioned the court that all or some one member of the committee be made parties or party defendant to this cause. Charles Van Nostrand, in his own behalf, and at the request and for the benefit of a committee of the holders and owners of upwards of $1,-000,000 of the general third mortgage bonds, and in behalf of all others who may join in protecting the interest of the third mortgage bondholders, also presents a petition that he may be made a party to the suit. These petitions are opposed by the trust company, complainant. There is also presented the petition of Edward D. Adams and others, a committee of bondholders representing $6,-036,000 of the second mortgage bonds, $6,593,000 of the third mortgage bonds, and $19,880,000 of the consolidated bonds, which in effect sustains the trustee in its objection to the allowance of the petitions of the other committees, and expresses contentment with the action of the trust company in the execution of its trust, but asks the court, if the prayers of the other petitions should be allowed, that they also may be made parties to the suit, as representatives of bondholders.

That the situation may be accurately conceived, a general review of the condition of affairs should be stated. The bonded indebtedness of the Northern Pacific Railroad Company, secured by mortgage or trust deed, is as follows: First. A mortgage dated May 1, 1879, to the Farmers' Loan & Trust Company as trustee, to secure bonds to the amount of $2,500,000, of which there are outstanding bonds to the aggregate amount of $1,904,000. This mortgage is upon the Missouri Division of the road, being that part of its main line extending from the Missouri river, in the state of North Dakota, to the Yellowstone river, in the state of Montana, and upon all the lands granted by congress appertaining thereto, with certain other property. Second. A mortgage to the Farmers' Loan & Trust Company, dated September 1, 1879, to secure bonds to the amount of $4,500,000, of which there are outstanding $455,000 in amount. This mortgage is on the Pend d'Oreille Division, extending from the Snake river, in the state of Washington, to Lake Pend d'Oreille, in the state of Idaho, and all the lands granted by congress appertaining thereto. Third. The general first mortgage to the Central Trust Company, dated January 1, 1881, to secure bonds now outstanding, to the amount of $43,393,000. This mortgage is upon the main line of the road and its Cascade Branch (being a branch over the Cascade Mountains to Puget Sound), and upon all lands granted by congress and upon the rolling stock of the company

and other property acquired or to be acquired for use in connection with its railroad.     Fourth. The general second mortgage issued to the Farmers' Loan & Trust Company, November 20, 1883, to secure an issue of bonds to an amount not to exceed in the aggregate $20,000,-000, and under which mortgage there are now outstanding bonds to the aggregate amount of $19,216,000.   This mortgage is upon the main line, telegraph lines, and upon the land grant, except as to those lands lying east of the Missouri river; also upon the lease of the St. Paul & Northern Pacific Railroad Company, and upon the one undivided half of that part of the St. Paul & Duluth Railroad which extends from its junction with the main line of the railroad of the Northern Pacific Railroad near Thompson to Duluth, Minn.; and also upon lands then owned or thereafter acquired in the city of St. Paul or Duluth for use in connection with or for the purposes of the road, and upon all other property, of every kind and nature, then owned or thereafter to be acquired, wherever situated or however held, for use in connection with or for the purposes of the railroads or any of them, or the business of the Northern Pacific Company.   Fifth. The general third mortgage to the Farmers' Loan & Trust Company, dated December 1, 1887, to secure bonds aggregating $12,000,000 principal, of which there are now outstanding $11,461,000.    This mortgage covers the main line of the railroad, the Cascade Branch, the land grant, the lease of the St. Paul & Northern Pacific, the undivided half of that part of the St. Paul & Duluth Railroad between Thompson and Duluth, and also all the interest of the Northern Pacific Company in some 20 branch lines of railroads mentioned, and all other branch roads that might thereafter be acquired or constructed and operated as feeders of the main line or of the Cascade Branch.    Sixth. The consolidated mortgage to the Farmers' Loan & Trust Company as trustee, dated December 2, 1889, to secure bonds in the aggregate not exceeding $160,000,000, under which there are outstanding bonds to the amount of $62,443,000.    This mortgage in general covers all the property and rights included in the previous general mortgages.   It recites also that some 21 branch lines have been constructed, naming them, and that the capital stock of all the branch line companies owned by the Northern Pacific Company is of the par value of $37,781,057.50, of which $8,552,600 is owned absolutely by the company, and the remaining stock, amounting at par value to $29,228,457.50, is held in trust for the railroad company to become the absolute property of the company when the mortgage debt of the branch lines is paid.   In addition to the indebtedness secured by mortgage upon the railway, there is also a certain collateral trust indenture, dated May 1, 1893, to the Farmers' Loan & Trust Company as trustee, to secure an issue of notes to the amount of $15,000,000, of which there were outstanding at the institution of the suit $10,050,000, secured by certain collateral bonds and stock of the branch lines and other roads controlled by the Northern Pacific Company.   The Farmers' Loan & Trust Company is also trustee under various mortgages

made by some 17 of the branch lines connected with the Northern Pacific Railroad to secure bonds amounting in the aggregate to some $33,873,000, which bonds bear the guaranty of the Northern Pacific Railroad Company.

This suit was originally brought by the Farmers' Loan & Trust Company as trustee under all the trusts recited, and by certain stockholders and creditors of the railroad company, and in behalf of all other stockholders and creditors of the company who might choose to become parties to the suit and contribute to its expense; praying the court to fully administer the trust fund in which the complainants were interested, constituting the entire railroad system, lands, and assets of the defendant corporation, to marshal all its assets, to ascertain the several respective liens and priorities existing upon each and every part of the system of railway and property, the amount due upon each and every part of the mortgages or other liens, and to enforce and decree the rights, liens, and equities of each and all of the preferred and common stockholders and bondholders and creditors of the company as the same may be finally ascertained and decreed upon the respective interventions or applications of each and every such stockholder or lienor in and to not only said lines of railroad, appurtenances, equipment, land, and property, but also to and upon each and every portion of the assets and property of each of the said corporations. Subsequently the Farmers' Loan & Trust Company filed its bill of complaint, setting forth the several mortgages upon the road executed to it as trustee, reciting the proceedings in the suit which it had brought in connection with the stockholders co-complainants, and asking that all the rights and franchises, and all the property, real and personal, of the Northern Pacific Company, may be declared subject to the lien of the consolidated mortgage; that an accounting may be taken of the outstanding bonds under the general second mortgage, and they declared a first lien on the property of the company described in the general second mortgage, subject only to the lien of the general first mortgage and the prior divisional mortgages; that an account be taken of the outstanding bonds under the general third mortgage, and that the amount of them may be found to be the next lien following the lien of the general second mortgage on the property described in the general third mortgage; that an account be taken of the outstanding bonds under the consolidated mortgage, and that the amount thereof may be found to be a lien next following the lien of the general third mortgage on the property of the company, according to the terms of the consolidated mortgage; that, in default of payment of interest due under the general second mortgage, the property and franchises of the company may be sold to satisfy the entire amount of the general second bonds and coupons; and that out of the proceeds the amount due under the general second mortgage may be paid, and the surplus, if any, be applied as the court may direct. Upon the filing of the bill, an order was entered, upon the prayer of the complainant, extending the receivership created under the original bill to the

bill of foreclosure filed by the trust company, and directing that the two causes be consolidated, the consolidated cause to proceed under the title of the bill of foreclosure.

The petitions, in brief, proceed upon the following grounds: First. That the trustee occupies inconsistent positions; that, by its bill to foreclose the second mortgage, it seeks to cut off the equity of the third mortgage bondholders; that, as trustee of the general second mortgage, it becomes its duty to press a foreclosure and sale, while, as trustee of the general third mortgage, it is its duty to avoid or delay such a foreclosure. Second. That grave questions exist whether the general first and the general second mortgage cover the same property, and whether the general third mortgage does not cover property that is claimed to be covered exclusively by the consolidated mortgage; that it is in the interest of the holders of consols that the expense of the receivership and administration should be charged against the interest of third mortgage bondholders, and of the latter that such expense should be charged only against the classes of bonds the holders of which are benefited by such expense; that the interest of the third mortgage bondholders is for a sale of the road so soon as it will realize enough to pay the interest and principal of the third mortgage bonds and of prior mortgages in full; and that the expense of administration, if such sale should be delayed, is in the interest of the consolidated mortgage bondholders, and counter to the interest of the bondholders under the general third mortgage; that it is in the interest of holders of consolidated bonds that all such hypothecated bonds should be redeemed, but that such redemption is counter to the interest of the third mortgage bondholders; that there is a conflict of interest between third mortgage bondholders and the holders of bonds issued under the mortgages on branch lines of which the complainant is trustee. It is also insisted that the complainant was guilty of improper conduct in assenting to the issue of receivers' certificates imposed as a lien upon the railroad property superior to the general second and third mortgages, and issued for the redemption of outstanding securities, and in failing to disclose to the court that it was itself the holder of some of the securities to be redeemed; and also that in the course of administration the trust company has acted with partiality towards the consol holders, and unfairly to the prior mortgage holders, in this: that it suffered provision to be made under which the proceeds of receivers' certificates to the extent of $2,000,000 and upward were used by the receivers to redeem some $4,000,000 of consols, $700,000 of Chicago & Northern Pacific bonds, and $400,-000 collateral trust notes which could not benefit the second and third general mortgage bondholders.

It is a cardinal principle in the administration of the law that no man shall be condemned without a hearing. Therefore, it is that no one shall be concluded by a judgment to which he is neither party nor privy. Therefore, it is that, as a general rule, all persons interested in a controversy must be made parties thereto, that their rights may be determined and concluded by the judgment. There

has grown into the practice an exception, in some states recognized by positive enactment, that the trustee of an express trust may maintain suit without joining his cestui que trust. This is to avoid the expense and the delay attending the getting together and joining of numerous parties whose interests had been committed to the keeping of a trustee, and could be protected by him without their intervention. Under this exception, it has been well held that, in general, courts can deal with bondholders only through their trustee, and that it is not to be tolerated that each individual bondholder could, at his own suggestion, proceed to assert his rights, when they can as well be asserted through a trustee. The rule, however, creates an exception to the general principle that all interested should join in the controversy. It is a rule of convenience, to facilitate the conduct of the suit. It proceeds upon the assumption that the cestui que trust can be fully and fairly represented and protected in his rights by the trustee or representative. A rule of convenience must, however, give way when rights are involved. If it appears that the trustee refuses or neglects to act, or stands in a hostile position, or has assumed a position prejudicial to the interests of the cestui que trust, the rule of convenience is put aside, and the cestui que trust admitted to represent his rights, because in such case the trustee has not or cannot fully and faithfully represent them. Jones, Corp. Bonds, § 338.

It is, however, insisted for the complainant that the court has not the power to permit these petitioners to intervene as parties to the suit, because so to do would be to permit them to violate their contract obligations. This contention is founded upon a provision of both the general second and general third mortgages to the effect that:

"No holder or holders of a bond, or of any bonds secured hereby, shall have the right to institute any suit, action, or proceeding, in equity or at law, for the foreclosure of this indenture, or for the execution of the trusts thereof, or for the appointment of a receiver, or any other action, suit, or remedy hereunder, or under or upon any bond or coupon for interest hereby secured, without first giving notice in writing to the trustee of default having occurred and continued, as in this article aforesaid, and requesting the trustee, and affording it a reasonable opportunity, to institute such action, suit, or proceeding in its own name, or to proceed to exercise the powers hereinbefore granted, and also offering to it adequate security and indemnity against the costs, expenses, and liabilities to be incurred therein or thereby; and such notification, request, and offer of indemnity are hereby declared to be conditions precedent to any suit or action, or right of suit or action, for the foreclosure or for the execution of the trust of this indenture, or for the appointment of a receiver, and to any other action, suit, or remedy hereunder, or under or upon any bond or coupon for interest hereby secured."

It is asserted that by this provision the bondholders have expressly agreed that except under peculiar circumstances of request and neglect to sue, which do not exist, their rights shall be protected and enforced only by the trustee. I cannot assent to this contention. The provision is restricted to suit by the bondholders to foreclose the mortgage, or to enforce the bonds except through the instrumentality of the trustee, but cannot, I think, be applied to a case where suit has been brought by the trustee, if the conditions

would justify a court in admitting the bondholders to intervene. They do not by this provision conclude themselves against the subsequent assumption by the trustee of hostile position or against its violation of duty.   The stipulation is a mere restraint upon suit by the bondholder unless and until the trustee, upon proper demand and indemnity, refuses to bring suit, but it cannot be that a trustee, by a mere formal institution of suit, could therein, by the assumption of hostile position or in violation of his duty, sacrifice the interests of the bondholders, and they be without remedy because of this stipulation.

It is claimed that the only remedy of the bondholders in case of dereliction of duty on the part of the trustee is to be found in article 15 of the mortgage, in which it is declared "that the trustee may be removed by the majority in interest of the bondholders of all of said bonds hereby secured and then outstanding, by instrument or instruments in writing, under their hands and seals, or by a vote of a meeting duly called and held as herein provided." This provision puts it in the power of a majority of bondholders at any time, and for or without cause, to displace the trustee, but does not limit or control the powers of a court of equity to permit the intervention of bondholders for the protection of their rights when otherwise it would be just or proper to permit them so to do.   The intervention does not displace the trustee, but admits the cestui que trust, that they may be heard in the protection of their claims.   The question, I think, resolves itself to this: Are the circumstances disclosed such as to call upon the court, in the exercise of a sound discretion, to permit bondholders to intervene for the protection of their rights?

I proceed now to the consideration of the grounds upon which intervention is sought, and to the consideration of the charges preferred against the trustee.   I do not design to go over the ground with respect to the propriety of the issuance of receivers' certificates.   That question was long ago fully presented, considered, and determined.   I am satisfied of the wisdom of the course then pursued, and that it has resulted in saving this great system of railway from disintegration.   The facts presented to the court upon that application were undisputed and indisputable.   Counsel for the present petitioning second mortgage bondholders was allowed, amicus curiae, to be heard at length.   There was no contention upon the facts.   It was a question of propriety of action upon ascertained conditions.   Certainly no objection can be justly taken to the action of the trustee with regard to its submission to the court of the question of the propriety of the issuance of those certificates.   It is said, however, that the complainant acted improperly in failing to disclose to the court the fact that it at the time held a debt against the company, secured by collaterals which it was proposed to redeem with the proceeds of the receivers' certificates to be issued.   It is true that that fact was not disclosed to the court, and therein I think the trust company failed in its duty to the court.   It should have disclosed that it was actually or possibly interested in the issuance of those certificates, and its omis-

sion to advise the court of its debt has given rise, I think, to just criticism. The action of the court, however, would have been no different had the fact been disclosed. It appears that the loan made by the trust company to the railway company was to aid it in an emergency; that the loan was made upon reasonable terms, no advantage being taken of the necessities of the company, and that it was a favorable loan for the company; that it has not as yet been paid, and has been carried by the trust company through a period of serious financial revulsion without charge to the estate other than the accruing interest; and that the trust company has not and does not desire with respect to this debt to avail itself of the provision of the order for the issuance of certificates. I cannot think that the omission to advise the court of this debt, while improper, was designed, and it certainly has resulted in no injury to the interests of the petitioners.

The court is then confronted with the question whether the trustee stands in such relation to the different mortgages upon the road that it may be hindered in fully and impartially representing each independent interest in the foreclosure of the general second mortgage and in the conduct of the suit. And here it must be remembered that this consolidated suit is not one merely to foreclose the general second mortgage; it is also an administration suit to marshal the assets, to ascertain and determine the several respective liens and priorities existing upon this whole system of railway, and to enforce the rights, not only of the lienors, but of the general creditors and stockholders of the company. I do not deem it proper at this time to assert the respective rights under the different mortgages, but it is apparent that there may well arise conflicting claims under these mortgages with respect to the property covered by each, and the respective rights of the bondholders thereunder. It is not needful, nor would it be proper, now to say that, as matter of proper construction of the various instruments, the contention cannot be sustained. It is enough to say that it is debatable ground, and in a court of justice, in the determination of such a question, the contestants have a right to be heard. If such questions should arise, how can the trustee under one mortgage, with strict impartiality, represent the interests under another mortgage? It was well said in Cuthbert v. Chauvet, 136 N. Y. 326, 332, 32 N. E. 1088, with respect to the duty of a trustee, that "the absolute and positive duty is imposed upon him to defend the life of the trust whenever it is assailed." A trustee cannot be permitted to assume a position inconsistent with or in opposition to his trust. His duty is single, and he cannot serve two masters with antagonistic interests. The interest of the general second mortgage bondholders is to secure their money as speedily as possible. The interest of the third mortgage bondholders is to delay foreclosure until arrangements can be made that will insure their interest in the property, and therefore to insist upon postponement of the enforcement of the rights of the second mortgage bondholders. The interest of the holders of consolidated mortgage bonds is in this respect antagonistic to both the general second and

general third mortgage bondholders. It would be improper to say what course should be pursued in the determination of the questions when they shall be confronted, but surely it would seem inconsistent with its trust under the consolidated mortgage for the trustee to insist upon immediate sale under the prior mortgages, and so vice versa. Upon that question each interest should be heard in its own behalf. These observations will apply also to possible contention between the different mortgage interests with respect to the property covered by each, and possible contention between the third mortgage bondholders, and the consolidated mortgage bondholders and the holders of collateral trust notes, with respect to which interest has a prior lien upon the collateral notes and upon the bonds of the branch lines which may be held by the trust company (complainant) as trustee. It would be neither profitable nor wise to forecast the controversies that may arise with respect to conflicting interests in this case. It is sufficient to say that each conflicting interest has a right to its day in court, and to be heard; and, where there is the same trustee in each of the mortgages and under the collateral trust agreement, it seems just and proper that each interest should be represented in the suit, that the court may be properly advised upon a full hearing of all interests. I think it will not do to say that the controversies suggested have not as yet arisen. They could probably never arise if all the bondholders under the different mortgages were alone represented by the same trustee. In such case their rights would most likely be determined without controversy. The presence of disputing parties is necessary that the conflict may be formulated and determined by judgment. It would, I think, be an anomaly if a trustee under one trust should sue himself as trustee under another trust to determine the conflict between the trusts. I think it proper, therefore, in view of the possible and probable conflicts that may arise, and in view of the position of the complainant as trustee under all these mortgages, that a representative of each interest should be admitted to protect the rights of each in any conflict that may arise between these interests.

It is objected to the application of the Livingston committee that it only represents a million or a million and a half dollars of bonds out of the total amount of $19,216,000; and to Mr. Van Nostrand that he or his committee only represent a million dollars of bonds out of $14,461,000; and that the Adams committee, opposing the granting of the petitions, and content with the action of the trustee, represents nearly one-third of the bonds issued under the general second mortgage, and over one-half of the bonds issued under the general third mortgage. This objection might be of great force and availing were it not for the fact that the Adams committee also represents nearly one-third—some $19,881,000—of the consolidated mortgage bonds. The Adams committee, therefore, stands in the same plight with the complainant, trustee under all the mortgages. Its interest would be not only to protect the general second and general third mortgages, but also the consolidated mort-

gage, and possibly its interest under the general second and general third mortgages might be subordinated to its larger interest under the consolidated mortgage.

It is also objected to the Livingston committee and to the Van Nostrand committee that they largely represent stockholders as well as bondholders. I am not impressed with the validity of this objection. The stockholders are now represented by the corporation defendant, actively asserting their rights in the suit. These committees could do no more. I am, however, impressed with the consideration that the Livingston and the Van Nostrand committees respectively represent but a small minority of the bonds issued under the general second and third mortgages; and if there were a representative of a majority of the bonds issued under these two mortgages respectively, having no other interest to serve than that of the respective mortgages mentioned, I should not feel inclined to grant these petitions. But they are the only persons before the court representing distinctively the interests of the mortgages under which they respectively hold bonds. The stock which they hold is at the best of but trifling value. It is not reasonable to suppose that they would sacrifice or endanger their bonds in the protection of that which is of but trifling value.

It is urged that these petitions should not be granted, because it is feared that they are not preferred in good faith, but merely to obtain vantage ground from which they can embarrass the trustee and the court in the management of this great railway, and impede and hinder the work and injure the credit of the receivership. The court has no right to assume that such is the purpose of the petitioners, nor can it perceive that such result can follow the granting of the petitions. If, however, such be the purpose,—which I have no right to assume, and which is disclaimed by counsel,— the court will be quite able to protect itself and the estate against improper intrusion into and attack upon the management of the property committed to its supervision. The petitioners are admitted for the protection of their rights, not for factional opposition to the management of this property by the receivers.

The fear is also expressed by counsel for the trustee that the exercise of the right to appeal may prevent a proper reorganization plan from being carried out. I am not forgetful of the considerations which influence the actions of courts with respect to properties of this kind in recognizing every fair plan of reorganization; nor am I unmindful of the consideration that the minority of bondholders are in large measure subject to the action of the majority; but such considerations ought not to avail to abridge the right to appeal in any case where a party deems his right infringed. It is more important that the right to appeal be preserved in its integrity than that any plan of reorganization should be carried into effect without the delay which may be incident to the assertion of legal rights. At the same time, however, care should be taken that, while the right should be granted, it should be protected from abuse. And to that end I have come to the conclusion to allow but

one individual of each of these committees to be represented in the suit, to the end that each mortgage interest shall thus have representation. This will, as I think, enable the court to be informed of the claims and rights of each interest, prevent confusion in the orderly conduct of the litigation, and factional opposition in the management of the estate.

The prayers of the several petitions will therefore be granted so far as to permit Mr. Johnston Livingston, Mr. Charles B. Van Nostrand, and Mr. Edward D. Adams to be made parties defendant to the suit for the purpose of protecting the interests of the bonds represented by them respectively in any conflict which may arise as to their respective interests in the estate.