# Northampton Trust Company, Trustee, *v* Northampton Traction Co. et al., Appellant.

*Trusts and trustees—Trustee under different mortgages covering same property—Foreclosure proceedings—Inconsistent interests—Trustee in different capacities—Duty to resign trust as to junior mortgages—Corporations.*

1. A trustee, under different mortgages covering the same security, may not faithfully and impartially discharge the duties of the trust, as between two or more independent sets of creditors, when it has instituted foreclosure proceedings under the first mortgage.

2. The trustee, in such case, should resign the trust as to the junior mortgages, and request the court to appoint successor trustees for such mortgages, and, in default of such appointment, should permit the holders of bonds secured by the junior mortgages to intervene and defend against a foreclosure.

*Mortgages—Foreclosure—Defense by junior mortgages—Decree refusing intervention—Final judgment—Appeals.*

3. Holders of bonds secured by junior mortgages should be permitted to intervene, in proceedings to foreclose the first mortgage, and to set up as a defense such circumstances as would preclude final judgment where such judgment would cause a positive injury to them.

4. A decree refusing to permit holders of bonds secured by junior mortgages to defend against a foreclosure of the first mortgage is a denial of a substantive right and is so far final to that right as to warrant an appeal to be taken therefrom.

*Mortgages—Corporate mortgage—Foreclosure—Default — Failure to pay interest — Powers of trustee — Rights of bondholders under junior mortgages.*

5. On default of payment of interest and taxes, the trustee under a corporate mortgage is entitled to a decree of foreclosure to recover the whole of the principal debt remaining due and all interest thereon under a provision in the mortgage providing that it shall be lawful for the trustee, in case of default in payment of interest for the space of sixty days, "forthwith to sue out a writ of scire facias or take any other proceeding at law or in equity thereon, and to proceed to judgment and execution for the recovery of the whole debt remaining due upon the bonds aforesaid, and all interest due thereon."

6. The trustee is not limited to foreclosure merely for interest, unless all the bondholders agree to such sale for unpaid interest, by reason of another provision in the mortgage that, upon default in payment of interest, the principal sum shall become due and payable at once at the option of the bondholders.

7. The latter provision is an independent remedy given to the bondholders while the former provision empowers the trustee to act on a default without request from any of the bondholders.

8. In such case, bondholders under junior mortgages have no standing to have the foreclosure stopped on payment of the overdue interest and costs on the theory that the principal of the bonds is not yet due and payable.

Argued January 5, 1921. Appeals, Nos. 176 and 177, Jan. T., 1921, by Bankers Trust Company, petitioner, from decree of C. P. Northampton County, in equity, Nov. T., 1919, No. 7, denying leave to intervene and defend in case of Northampton Trust Company, Trustee, v. Northampton Traction Company, Easton Trust Company, Trustee, Defendants, Bankers Trust Company, Trustee, intervener. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Schaffer and Sadler, JJ. Modified and affirmed.

Bill in equity to foreclose corporate mortgage. Before Stewart, P. J.

Petition of Bankers Trust Company to intervene and defend.

The proceedings involved foreclosure on the first mortgage of the Northampton Traction Company. The Bankers Trust Company was the holder of part of the first mortgage bonds, and all of the second and third mortgage bonds of the Northampton Traction Company.

The opinion of the Supreme Court states the facts.

The court denied the petition to intervene and defend in the foreclosure proceedings: See 17 Northampton Co. R. 386. The petitioner appealed.

*Errors assigned,* among others, were the decree denying right to intervene and defend, and the decree of foreclosure.

*Selden Bacon* and *W. W. Montgomery, Jr.,* with them *T. McKeen Chidsey, Roberts, Montgomery & McKeehan,* and *White & Case,* for appellant.—The appellant as the holder of the second and third mortgage bonds, was entitled as of right to intervene and be made a party with leave to answer: Farmers Loan & Trust Co. v. R. R., 66 Fed. 169; Farmers' Loan and Trust Co. v. R. R., 70 Fed. 423; Central Trust Co. of New York v. R. R., 218 Fed. 336.

Appellant has standing to appeal from the decree refusing leave to intervene: Central Trust Co. of New York v. R. R., 218 Fed. 336; Frey's Est., 237 Pa. 269; Lynn v. Lynn, 256 Pa. 563.

*H. J. Steele* and *E. J. Fox,* with them *J. W. Fox,* for appellee.—A provision in a mortgage giving the mortgagee the right to declare and treat the entire amount secured as immediately due and payable upon default in the payment of any installment or of interest or taxes due is a valid and enforceable contract: Holland v. Sampson, 4 Sadler 164; Huling v. Drexell, 7 Watts 126.

The fact that the foreclosure of a mortgage would be detrimental to the interests of the holders of the bonds of other constituent companies, and that the road would sell for a better price as a whole, are not sufficient grounds for depriving the holders of the bonds secured by the first mortgage from proceeding under it: Phila. Trust Co. v. Traction Co., 258 Pa. 152; Columbia & M. Elec. Co. v. Transit Co., 258 Pa. 447.

Depressed condition of the money market is clearly no defense against the right to foreclose.

An intervener in a suit between other parties must accept such suit as he finds it, and is bound by the record of the case at the time of his intervention: Teachount v.

Ry., 75 Iowa 722; Ragland v. Wisrock, 61 Texas 391; Brown v. Saul, 16 Am. Dec. 180; Sailor P. Mill Co. v. Moyer, 35 Pa. Superior Ct. 503.

OPINION BY MR. JUSTICE KEPHART, March 14, 1921:

The Northampton Trust Company, trustee under three separate mortgages of the Northampton Traction Company, covering its line of railway from Easton to Nazareth and Bangor, filed a class-bill as trustee and creditor to declare the traction company insolvent, and place its property under control; later, by amendment to these proceedings, it instituted foreclosure proceedings under the first mortgage. Then the Bankers Trust Company, owners of junior mortgage bonds, resisted the sale, raising a number of questions, which we will consider in their order, reciting such additional facts as may be necessary to the determination of the points involved.

Can a trustee, under different mortgages covering the same security, faithfully and impartially discharge the duties of its trust, as between two or more independent sets of creditors, when foreclosure proceedings have been instituted under the first mortgage?

A trustee of a corporate mortgage has little actual work to perform; selected in part to give tone to the obligation and encourage the sale of securities,—as a sort of certificate of the mortgagor's standing,—its duties are to a large extent passive until some default occurs, when they become active; it must faithfully discharge the obligations of its trusts to each set of creditors; having been selected, confided in and used for the purpose of establishing credit, it must preserve its high position of absolute neutrality and equality among all, showing no signs of partiality at which the accusing finger of unfairness can be pointed, even though such acts may not amount to actionable legal wrong. On the other hand, it should not be harassed by wholly unwarranted and unjustifiable demands of disappointed

minority creditors. These demands become more importunate and less easily satisfied when the fiduciary represents different sets of clamoring creditors, each striving to secure a return of his investment. Being required to act as trustee for but one set of creditors, clears the atmosphere and makes for fair play; at any rate nothing remains of the dual relationship upon which to ground a charge of wrongdoing on his part. For a chancellor to require an independent trustee for each mortgage, symbolizes the fairness, justness and impartiality of a court of equity. Conditions may well arise in the progress of litigation, or in the operation, care or development of the property entrusted to a fiduciary, which call for the exercise of sound business or legal judgment wherein discretion is involved. Courts will not permit conditions to exist from which creditors may entertain the thought that these tribunals have been of aid or parties to the commission of errors of judgment or questionable conduct on the part of those they permit to be in authority over property technically in the control of the court. We can easily imagine many situations where a trustee might so act as to be of positive benefit to junior creditors, without impinging a particle on the first creditor's right; if the circumstances associated therewith, usually within the knowledge of the interested actors only, were known in detail by the junior creditors, they might be able to forestall harmful results. Ordinarily, as the purchaser of the property under sale, the trustee wields considerable power and may be tempted by others to use it to the detriment of junior creditors. It is needless to discuss a situation of this character; all who have conducted similar proceedings know the grave tendency of those forcing liquidation to overreach junior creditors and even creditors in the same class, and to that end to take advantage of every means, fair or foul, so long as the desired result is obtained and the interested parties commit no criminal wrong; the success of such efforts would be due to one

acting in a capacity trusted by all sets of creditors, and with the seal of the court's approval. A chancellor should not hesitate to strip a controversy of every semblance of partiality or unfairness, which tends to discord among those who appear before it.

It is no answer, in this case, to say the junior creditors knew that other debts were before them, and who was to act as trustee; they do not complain of this; what they complain of is that, through unfairness, they are being "squeezed" out without an opportunity to be heard. It is not necessary for actual fraud to appear before equity will intervene. The trustee is acting in a fiduciary relation with respect to contending creditors, and should be free from the embarrassment of being compelled to deal with himself in a dual capacity. It is not necessary to determine what conflicting claims may arise, either with regard to the extent, validity, terms of the mortgage or application of income from the operation of the property; it is sufficient that they may well arise; and public policy requires, where controversies are brought into court, that each party should be represented by someone whose single object it is to secure all to which such party is entitled, unhampered by personal relations to an adverse party, who is bound in conscience to be a loyal and vigorous champion, without any obligation to a conflicting creditor or party; it is because of this anomalous situation between the several independent sets of creditors that equity, always jealous of her impartiality, should have acted in this case. See Farmers' Loan & Trust Co. v. Northern Pacific Ry. Co. (C. C.), 66 Fed. 169; Farmers' Loan & Trust Co. v. N. P. Ry., 70 Fed. 423; Jones on Corporate Bonds, 399, page 438; Brown v. Denver Omnibus & Cab Co., 254 Fed. 560, 567; Lowenthal v. Georgia C. & P. R. R., 233 Fed. 1010, 1013.

The appellant here was vitally interested in the proceeding as holder of second and third mortgage bonds, and the trustee was under obligation to protect it to

the limit of its ability; the power to do harm was there and might be exercised, and, to prevent the possibility of such exercise, the trustee should have resigned and permitted the court below to appoint successor trustees for the two junior mortgages, and, in default of such appointment, permitted intervention. The refusal to do this was the denial of a substantive right to appellant, and the decree thus entered was so far final to that right as to permit an appeal to be taken therefrom. The right to intervene in such case was absolute: Frey's Est., 237 Pa. 269. We will treat the intervention as having been ordered, and the answer accompanying the petition to intervene as though filed in the foreclosure proceedings, as it was intended; accordingly we will determine the legality of the defense interposed by appellant.

It may be stated as a general principle that an intervener must take a suit as he finds it, and should be bound by the record of the case at the time of intervention: 11 A. & E. Enc. Pl. and Pr. 509. He can, of course, contest the plaintiff's claim on the ground of collusion (17 Am. & Eng. Ency. of Law (2d ed.) 185; note following Brown v. Saul, 16 Am. Dec. 175, at page 180; Sailor Company v. Moyer, 35 Pa. Superior Ct. 503, 506) and should be permitted to set up as defense such circumstances as would lawfully preclude final judgment or decree—in this case, directing a sale of the property where such judgment or decree works a positive injury to the intervener. Ordinarily, assuming there are different trustees, junior creditors will not be permitted to intermeddle in litigation between plaintiff and defendant unless they show some injury to themselves: Andrews v. Window Glass Co., 268 Pa. 565. That foreclosure will be detrimental to the holders of the second mortgage will not deprive the holders of the first mortgage of the right to proceed: Dickerman v. Northern Trust Company, 176 U. S. 181, 191; Phila. Trust Co. v. Northumberland, etc., Co., 258 Pa. 152; Columbia, etc., Co. v. North, etc., Co. 258 Pa. 447, 454. Nor will de-

pressed conditions of the money market be a defense to such right to foreclose. Hardship or evil motives cannot prevail against the enforcement of a legal right: Dickerman v. Northern Trust Co., supra, page 190. This intervener does not attempt to strike down the action, but denies the right to foreclose for the entire debt under the terms of the mortgage; but, in so doing, asserts a right which, it is claimed, is exclusively for defendant; and it, by answer, admits the entire debt due: Sailor Co. v. Moyer, supra, page 506. Without passing on this question, the basis upon which it proposes to defend is without legal foundation.

The bill avers the traction company was insolvent, unable to pay its debts, including interest on bonds, and in arrears for taxes due the Commonwealth; it prayed, among other things, the corporation be decreed insolvent, liens ascertained and determined, a sale of the premises ordered,—a receiver was appointed meanwhile to take care of the assets. An answer was filed by the traction company admitting all these averments. The amendment to the bill recited the terms of the first mortgage in some detail, and asked the court to find the principal and interest due and owing, and decree a sale under the mortgage. The traction company again filed an answer, admitting these facts, as did plaintiff as trustee of the second and third mortgages, and the Easton Trust Company, trustee of the fourth mortgage. An order of sale was decreed; it was at this juncture the Bankers Trust Company stepped into the case, setting up the inconsistent position of the plaintiff as trustee in the three mortgages, denied the principal debt was due, as admitted by the traction company, averring interest only was due and collectible, and that the consent of all bondholders of the first mortgage to a sale for such purposes had not been obtained. If anyone of these positions is correct, the harm done the intervener, who must raise a large sum of money or suffer irreparable loss, is apparent.

Appellant relies partly on section 2 of the mortgage, urging it controls all other sections with reference to sale. We will discuss this section later, as it gives an independent remedy applicable to bondholders. The trustee does not, in the original or amended bill, claim authority under it, but plants its right to proceed under the 5th, 11th and 12th sections of the mortgage. The 5th section reads: "It shall and may be lawful for the trust company,......in case default shall be made for the space of sixty days in the payment of any half-yearly interest on the said principal sums after the payment thereof shall fall due......and if such default shall continue for the space of sixty days......forthwith to sue out a writ of scire facias or take any other proceeding at law or in equity thereon, and to proceed to judgment and execution for the recovery of the whole debt remaining due upon the bonds aforesaid, and all interest due thereon." Appellant admits a default has occurred in the payment of the interest, and foreclosure may be brought, but insists "the principal of the bonds is not yet due and payable, and, on payment of the overdue interest and costs, the holders of the junior bonds would be entitled to have the foreclosure stopped." It distinguishes between default, the right to foreclose, and maturity of the principal of the debt. A foreclosure decree must find the amount due as a result of the default and give time for redemption (Clark v. Reyburn, 75 U. S. 318; Chicago, etc., Co. v. Fosdick, 106 U. S. 47), otherwise execution cannot be had. We have a default for unpaid interest, and the foreclosure was "to recover the whole of said principal debt remaining due, and all interest thereon"; here, an accelleration of the maturity date of the principal, through failure to pay interest, was clearly intended. The court below so held, finding the amount due, fixing it as an upset price at the sale, and named a time within which to redeem. If we limit paragraph five solely to foreclosure, free of liens for failure to pay the principal at maturity, or if all bondholders must

agree (under section 2) to such sale (under section 5) for unpaid interest, then the clause with respect to sale for default in interest, as it relates to the trustee's duties, would be narrowed and much of the protection to bondholders would be taken away; and the clause as to default "in the performance of any of the other covenants, promises and agreements," would be meaningless; if section 2 is to be imported into section 5, and the owner of a $100 bond could hold up proceeding on the default, these clauses might well have been omitted from the mortgage. To foreclose merely for interest does not bring to the bondholder the protection intended by the very language of the mortgage, but such action has a tendency to again place the property under the control of those whose management failed to make it yield sufficient revenue to pay the interest, and, by adopting such process, a gradual wasting away and depletion of the property takes place, in the end destroying the bondholders' security. We cannot agree that the Fosdick case, supra, controls. There is no inherent right in the owner of a bond, upon default in payment of interest, to demand the principal before the day of maturity, and a default will not, ordinarily, accellerate the maturity of the principal of a mortgage unless there is an express provision in the writing. The fifth clause gives to the trustee, on default in payment of interest or principal, or nonperformance of any other covenant for a space of sixty days, along "with the ordinary remedy by scire facias," "or by any proceedings in equity," "the following additional right and power": (1.) "at the request of one-fifth of the outstanding unpaid bondholders,...... [it] shall take actual possession of the mortgaged property, advertise it for sale, and sell to the highest bidder, free and clear of all liens"; then, disjunctively, (2) "the trustee company.....[on the default mentioned] forthwith to sue out a scire facias, or (3) to proceed at law or in equity to judgment and execution for the recovery of the whole of the principal debt remaining due, and

interest." On the commencement of proceedings to enforce "the rights of the trustee," a receiver may be appointed to take charge of the property. The section deals with the trustee and his duties, and the consent of bondholders is not necessary before commencing the proceeding here invoked; the power to act is given the trustee without limitation. Section 2 is an independent clause giving to the bondholders, either in whole or in part, a right in themselves to determine whether a sale should be made when the interest was unpaid. It was a privilege given in addition to any other that might be found in section 5, as noted above, and, except as section 2 might be controlled by section 11, it did not prescribe any duties for the trustee, while section 5 relates solely to such duties; as to this remedy, it was empowered to act on a default without request from any of the bondholders. To be within the Fosdick case, supra, section 2 must be read into section 5, and the action of the trustee made dependent on a demand from all the bondholders, to proceed for default as contended by appellant. It would be an inharmonious construction to give it such effect, would only temporarily relieve the present condition, do violence to the terms of the mortgage, and be in direct conflict with its intent and spirit. The paragraph "The rights of entry and sale heretofore granted are intended as cumulative remedies, and shall not be deemed to deprive the trustee of any legal or equitable remedy by judicial proceedings appropriate to enforce the provisions of this instrument," indicates that each remedy was separate and distinct, depending on itself and no other provision in the mortgage. The Fosdick case holds that, where a notice and precedent action was stipulated for in the mortgage, failure to lay these grounds prior to moving foreclosure would not advance the maturity of the bonds, and any effort thereafter to cure this defect would not be effective for the purpose. Morgan's, etc., Co. v. Texas Central Ry. Co., 137 U. S. 171, and Guaranty, etc., Co. v. Green, etc., Co., 139 U. S.

137, while not containing similar default clauses, as in the Fosdick case, evidence an intention to at least localize the Fosdick decision. However this may be, it is clear this case does not apply to the mortgage in controversy any more than it did to the last two cited decisions.

We need not discuss the question as to whether the amendment to the bill was proper. There is no exception to the order of April 5,. 1920, allowing the amendment; nor has the amendment been assigned for error. The court has definitely found the amount due under the default, and, by reason of this breach, not only the interest and principal became due January 1st, but there were defaults in the payment of taxes, causing the principal sum to become due.

There was no error in the final order of sale; the assignments are overruled and the decree of the court below is affirmed, at the costs of appellants.