**PRINTING AND PAPER TRADES AUXILIARY WORKERS, directly affiliated Local under AFL–CIO, by Thomas F. Malin, President and Trustee ad litem**

**v.**

**The CUNEO EASTERN PRESS, INC. OF PENNSYLVANIA.**

Civ. A. No. 74–2749.

United States District Court, E. D. Pennsylvania.

Nov. 18, 1976.

---

Michael Brodie, Pechner, Sacks, Dorfman, Rosen & Richardson, Philadelphia, Pa., for plaintiff.

Barry Simon, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

■ Where a U.S. District Court has ordered enforcement of a labor arbitration award against an employer which by its terms requires further proceedings (i. e., arbitration or negotiation) before its precise amount can be calculated; where counsel for the employer has conceded, in open court, a minimum amount due under the narrowest reading of the award; and where an appeal has been filed, but no supersedeas bond has been posted or stay of execution obtained, can levy of execution and marshal's sale proceed on the financially distressed employer's obsolescing assets (to the extent of that minimum amount)? That question is presented by a motion to compel execution sale in this case.[1] We answer that question in the affirmative, though we will require that the proceeds of the marshal's sale be paid into court to abide the outcome of the appeal, and, in the event of affirmance of our District Court judgment, of the negotiation or arbitration proceedings which will determine the precise sum due and the persons to whom it is due.

The Printing and Paper Trades Auxiliary Workers, Local 520, AFL–CIO (the Union) instituted arbitration proceedings because of the adverse effect upon its members when their employer, Cuneo Eastern Press, Inc. (Cuneo) discontinued most of its Philadelphia operations and transferred them to a plant in Kokomo, Indiana.[2] After extensive consideration, the arbitrator sustained the grievance and directed Cuneo "to pay each affected employee the amount he would have earned during the first four months following his layoff, less the normal deductions" (Opinion of Arbitrator, at 20). Thereafter Cuneo brought an action in this Court to vacate the arbitrator's award, and the Union counter-sued for enforcement of the Arbitrator's order.

On March 17, 1976, following hearing on cross-motions for summary judgment, we delivered a bench opinion, pursuant to which we entered an order which, *inter alia*, granted the Union's prayer for enforcement of the arbitrator's award, but denied its request for attorneys' fees and pre-judgment interest. We provided, however, that if the parties could not agree upon the precise amount due and the identities of those to whom it was due, that matter was to be referred back to the arbitrator for determination. Both parties appealed.

Cuneo having failed to post supersedeas bond or to otherwise stay the judgment,[3] the Union proceeded to execute upon it. At its request the Clerk of the Court issued a Writ of Execution directing the Marshal to levy and sell Cuneo's property to satisfy judgment for $280,000, plus interest, costs, and fees. The U.S. Marshal thereupon levied on Cuneo's printing presses, but refused to conduct a sale unless so ordered by this Court. The Union moved for such order,

---

**1.** Appeals are pending before the Third Circuit Court of Appeals, Nos. 76–1822/23. Despite the appeals, we retain jurisdiction over this motion as one "in aid of execution of a judgment that has not been superseded. . . ." 9 Moore's Fed.Prac. ¶ 203.11. *Cf. Sirloin Room, Inc. v. American Employers Insurance Co.*, 360 F.2d 160 (5th Cir. 1966).

**2.** Cuneo Eastern Press, Inc. of Pennsylvania is a wholly owned subsidiary of Cuneo Press, Inc.

of Illinois. The parent owns and operates a national chain of printing plants, including the one in Kokomo, Indiana. The parent was originally named as a defendant in the Union's suit; however, before the parent's motion to dismiss or to quash service of process was decided, the Union filed a notice of dismissal as to it under Fed.R.Civ.P. 41(a)(1).

**3.** *See* Fed.R.Civ.P. 62(d). *Cf.* Fed.R.App.P. 8.

and Cuneo filed a counter-motion asking us to quash the writ of execution.

■ The Union contends that, despite the taking of an appeal, the judgment-creditor retains its rights in the judgment and the issuing court retains its jurisdiction to enforce the judgment, until a supersedeas bond is posted or a stay granted.[4] However, the Union does not, (and cannot) rest upon this position, in view of the further proceedings necessary to fix the amount and beneficiaries of the award. Additionally, it relies heavily upon the legal effect of the following colloquy in the record of the hearing on the motion for summary judgment:

> *The Court* : How much money does the arbitrator's award involve, Mr. Anderson?
>
> *Mr. Anderson* [counsel for Cuneo]: At a minimum, Your Honor, depending on whose interpretation of the arbitration award governs, it is $280,000. It is somewhere between $280,000 and $325,000 at a minimum. That is interpreting the award as applying only to those employees who were affected by the alleged breach of the agreement.

Transcript of Argument, at 4 (March 17, 1976).

4. We agree. *See* note 1, *supra*.

5. The Union, in its motion for an order directing sale, claims that counsel for Cuneo has so stated on numerous occasions; Cuneo's memoranda do not deny this.

6. The Union reports in its Reply Memorandum that it has also garnished funds due to Cuneo from The Hearst Corporation.

7. Rule 69 refers to state "procedure," but whether the issue (of whether a judgment enforcing an arbitration award is sufficiently definite to execute upon) is "procedural" or not does not appear to have been decided. We do not reach this issue because the only "substantive" law which Cuneo proffers as an alternative to state "procedural" law refers us again to state "procedural" law, and because it would not appear, in any event, to make any difference.

The federal substantive law that Cuneo suggests might, alternatively, be applicable is the judicially-fashioned federal law which Congress implicitly authorized in § 301(a) of the

The Union also contends that we should order execution because (1) Cuneo lacks sufficient assets to meet the judgment;[5] (2) Cuneo's main attachable assets, printing presses, are subject to loss of value due to obsolescence;[6] and (3) there is serious doubt as to whether the corporate veil can be pierced, so as to reach the assets of Cuneo's financially responsible parent (*see* note 2, *supra*). The Union thus submits that speedy sale is necessary to protect the legal rights adjudicated.

Cuneo's opposition to execution is founded upon its contention that the judgment fails of executability through indefiniteness, both as to the amount and also as to the identity of the judgment-creditors. Additionally, it argues that it would be irreparably injured by a sale, should the Court of Appeals reverse the judgment. This irreparable injury allegedly would result, if the Union were allowed to distribute the proceeds of the sale, from the insufficiency of Union assets to guarantee repayment.

■ The parties agree that, on the issue of the sufficiency of the judgment to support execution, we are controlled by Rule 69, Fed.R.Civ.P., which directs us to apply state law in the absence of applicable federal statute.[7] The parties disagree,

Taft-Hartley Act, 29 U.S.C. § 185(a). *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). *Lincoln Mills* itself specifically found a federal policy of encouraging arbitration where it has been agreed to in a collective bargaining agreement. In developing the *Lincoln Mills* doctrine the Courts have often been faced with the issue of the enforceability of particular arbitration awards. Cuneo suggests that we should follow the holding of *Enterprise Wheel and Car Corp. v. United Steelworkers*, 269 F.2d 327 (4th Cir. 1959), *rev'd* on other grounds, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), which it interprets as stating that an incomplete arbitration award is unenforceable *per se*, but that it can properly be remanded to the arbitrator. But that is not the issue before us now. We believe it to be settled that a United States District Court can remand an incomplete arbitration award. *Hart v. Overseas National Airways, Inc.*, 541 F.2d 386 (3rd Cir., 1976). However, *Enterprise Wheel* does not create any distinctive federal law on sufficiency or definiteness necessary to *execute upon* an already

however, as to what the applicable law of Pennsylvania requires. Cuneo argues that the judgment must be definite both as to the amount due and the identity of the recipients.

Cuneo relies on a Pennsylvania mortgage foreclosure case, *Northampton Trust Co. v. Northampton Traction Co.*, 270 Pa. 199, 112 A. 871 (1921). However, that case held only that a "foreclosure decree must find the amount due as a result of the default and give time for redemption. [citations omitted]. Otherwise execution cannot be had." 270 Pa. at 207, 112 A. at 873. Our own research revealed another Pennsylvania case which we believe to be more on point. In *Sterling Electric and Furniture Co. v. Peterson*, 409 Pa. 435, 187 A.2d 285 (1963), defendants filed a petition to open a judgment for $6,650.00 that had been entered under a confession of judgment. Since the defendants had admitted at deposition that $1,752.00 was due, the State Supreme Court held that execution on that amount was proper, pending determination of the challenge to the remainder of the judgment.

In view of the paucity of Pennsylvania precedent the parties have relied mainly upon attempts to establish a general rule of law among the states. Cuneo has referred us to an extensive annotation and the cases collected therein. 55 A.L.R.2d 723. That annotation contains impressive authority for the rather obvious proposition that one must be able to determine authoritatively and exactly the amount to be executed for under a judgment.[8] However, the very case being annotated, *Missouri v. Haney*, 277 S.W.2d 632, 55 A.L.R.2d 717 (Mo.1955), interpreted the rule of definiteness as al-

lowing examination of the entire record in the case, and not just the order of the court, to determine whether the order was void for uncertainty.

Cuneo also relies heavily on California precedent, citing *Berg v. Superior Court*, 181 Cal.App.2d 565, 5 Cal.Rptr. 324 (1960) (no execution on judgment, where judgment was for 50% of net proceeds of sale obtained by *non-parties* who were not bound); *Bank of America National Trust and Savings Assoc. v. Standard Oil Co.*, 10 Cal.2d 90, 73 P.2d 903 (1937) (no execution on judgment for specified percentage of an indefinite total fund, where specificity is supplied only by ex parte affidavit); *Baar v. Smith*, 201 Cal. 87, 255 P. 827 (1927) (no execution on alternative judgment for money which would require sheriff to make judicial determination as to whether non-money alternative had been performed). However, in light of Cuneo's reliance on California precedent, the recent decision in *Pinecrest Productions, Inc. v. RKO Teleradio Pictures, Inc.*, 14 Cal.App.3d 6, 92 Cal. Rptr. 44 (Dist.Ct.App.1970), seems particularly relevant. For, while the *Pinecrest* Court articulated the rule of definiteness argued by the defendant in our case, it also found that the judgment was sufficiently definite for execution although the trial court had only ordered an adjustment in defendant's accounting, on the ground that the defendant had *admitted* that the amount at issue was due by bringing an interpleader action to determine rights in that amount.

In light of *Sterling, Haney,* and *Pinecrest,* the issue in the instant case can

---

enforced arbitrator's award. We find that the federal policy of encouraging arbitration would not be promoted by placing greater restrictions on executability of judgments enforcing arbitration awards than there are upon the executability of ordinary federal court judgments.

8. It is, of course, inconceivable that a sheriff or a marshal could execute upon property without some prior determination of what is due. The texture of Pa.R.Civ.P. demonstrates that a certain amount must be specified in or attributable to a judgment. For example, the title of the chapter which includes the rules on execution is "Enforcement of Money Judgment for the Payment of Money." A judgment is defined, for purposes of that chapter as an "order, or decree requiring the payment of money. . . ." (Rule 3101). The form for the praecipe for the writ of execution requires that plaintiff's attorney fill in the amount due on the judgment (Rule 3251). Similarly, the form for the writ of execution requires the prothonotary to fill in the amount due. Nowhere is the plaintiff's attorney, or the prothonotary, or the sheriff, authorized to use his/her discretion to decide the amount of the judgment.

be reframed as whether a reference to the *whole record* provides sufficient definiteness for execution, at least on the minimum amount due on any reading. We find that it does. During the course of hearing on the cross motions for summary judgment, Cuneo's counsel stated unambiguously that the minimum amount due, if the arbitrator's award were to be upheld, would be $280,000. *See* p. 591, *supra.* The question before us then was whether the arbitrator had authority to make such an award. If he did have authority, it was admitted that $280,000, at least, was due to employees whose identity could be specified without a remand. (Transcript at 7). As we see it, this admission is sufficiently specific to support an execution and sale up to $280,000. *Sterling, supra, Pinecrest, supra.* Cf. *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) (client bound by counsel's admission in open court on matter of fact "which otherwise would require evidentiary proof").

In view of the foregoing analysis, we believe that the marshal's sale should now be allowed to proceed, particularly in view of the inadequacy of Cuneo's assets, the risk that those assets will decline in value due to obsolescence, and the uncertainty as to whether the corporate veil can be pierced. Indeed, it would be unfair to the plaintiff to allow the machinery to depreciate further in value, perhaps rendering their claim worthless. However, before ordering the sale, we must confront Cuneo's contentions that to permit distribution would leave it with no adequate recourse against the Union, should our enforcement of the Arbitrator's award be reversed on appeal.

■ Such a contention, of course, could always be made where a losing party takes an appeal, but fails to post a supersedeas bond or obtain a stay. However, there is no requirement in our law that, where there is an appeal pending, the victorious party post bond as a condition of execution sale. Nonetheless, distribution of the proceeds of sale in the present context presents a problem. There is a continuing dispute between the parties about the interpretation of the arbitrator's award. Cuneo's counsel summarized this dispute:

> . . . the union takes the position that the employees affected are all those employees laid off as a result of the closing of the Philadelphia operation . . . [But] a number of those lay offs are at least arguably attributable to the company's loss of business rather than to any transfer of work, which was the alleged contract violation.

(Transcript, at 5).

Until this issue is resolved by negotiation or by the arbitrator upon remand, it will not be possible to specify with certainty all the judgment-creditors and the amount due to each.

Since the parties appear to agree that Cuneo cannot satisfy even the minimum judgment of $280,000.00, (and since, in any event, it does not appear that the printing presses are worth any where near that amount), it will be necessary to apportion the recovery among the whole number of covered employees once their number and share have been determined. Accordingly, while we will direct that the marshal's sale proceed, we shall order the proceeds of sale to be paid to the Clerk of the Court for deposit in an interest bearing account to abide the outcome of the appeal and the ultimate determination (if our decree enforcing the arbitrator's award should be affirmed) of the precise amount due and the identity of the persons to whom it is due.