[Civ. No. 15716.   First Dist., Div. Two.   Apr. 22, 1954.]

FRANCES LANE, Respondent, v. JAMES PARKS BRADLEY, Appellant.

Sullivan, Roche, Johnson & Farraher for Appellant.

Aaron N. Cohen, Sidney Rudy and Allen M. Singer for Respondent.

NOURSE, P. J.—This is an action by a former wife against her former husband for payment of 40 per cent of his net income due her under the provisions of their Nevada final divorce decree of June 24, 1946, which approved and incorporated by reference a property settlement agreement of May 14, 1946. The percentage of income so claimed related to a period subsequent to the remarriage of the wife. The court sitting without a jury heard evidence as to the financial circumstances under which the property settlement was made and concluded: ''That plaintiff's right to receive forty per cent of the net income of defendant as provided in said Decree has not terminated or been diminished by reason of the remarriage of plaintiff or for any other reason.'' Judgment was for plaintiff as prayed for and defendant appeals, urging, as he did in the trial court, that said payments, as a matter of law, were payments for the support of the wife, which under section 139, Civil Code, terminated on her remarriage.

The following is the substance of the most relevant recitals and provisions of the property settlement agreement:

The parties have property both community and separate; they desire to agree to a permanent separation and to deter-

mine their respective property rights, to adjust all rights and claims of each as against the separate property of the other and as against the community property of both and all claims against each other and to provide for the care and custody of their minor children. The agreement is intended as a property settlement agreement referring to property rights only and not to constitute any condonation or bar to a divorce action.

2. The husband grants to the wife certain real and personal property. 3. He agrees to pay the premiums on certain life insurance policies of which the wife is the beneficiary and not to change the beneficiary during her lifetime. 4. The wife shall have the right to occupy the Scott Street home during her lifetime rent free, she to pay for maintenance and repair, the husband to pay taxes, insurance and installments and interest of a loan. The right of rent free occupation continues in case of remarriage of the wife, but she must then pay the taxes and insurance. If the wife gives up the occupation the home shall be sold and the net proceeds be divided equally between the parties.

5. The husband shall deposit in escrow as security for his obligations under the agreement certificates of 40,000 shares of Bradley Mining Company stock on the conditions, among others, that the stock and dividends remain his separate property, but that the wife has the right to have the shares in whole or in part sold at a price to be specified by her, the proceeds then to be hers. 6. Commencing January 1, 1947, the husband shall pay the wife 40 per cent of his net income, exclusive of capital gains and losses and capital distributions, but before deduction of income taxes and charitable contributions, less 1 per cent for each 1,000 shares of stock the wife will have had sold under the preceding provision. If the payments to be made to the wife shall be included in the husband's taxable income the wife will pay a proportional part of the husband's income tax. 8. Upon the death of the wife the escrow shall terminate and the property still on deposit shall vest in the husband as trustee, he to have the income during his lifetime and on his death the principal to vest in the children of the parties or their issue.

9. The wife shall have the custody of the children, the husband all reasonable right of visitation. The parties shall contribute to the support and maintenance of the children in proportion to their respective financial ability.

14. The husband agrees to make a will containing the following irrevocable dispositions:

(a) To bequeath to the wife the property still in escrow or the proceeds thereof, in full discharge of the husband's obligation to make further payments; (b) to devise and bequeath 50 per cent of the rest of his estate to the wife as trustee, she to have the income during her lifetime and on her death the principal to vest in the children of the parties or their issue.

15. Except as hereinabove otherwise provided, all that is in the possession or in the name of each party shall be that party's separate property. Performance by the husband of this agreement shall constitute full satisfaction of all claims of the wife against him and against his separate property and the community property and of her right to support, maintenance or alimony. 18. This property settlement agreement shall be submitted for approval to the court in an action for divorce or separate maintenance and shall become binding only upon such approval. 19. The agreement shall bind the parties and their heirs, executors, administrators and assigns.

Appellant contends that the above agreement as incorporated in the Nevada decree, according to its contents and its description in the Nevada complaint and decree did not only provide for settlement of the property rights of the parties but also for the support of the plaintiff; that the decree does not segregate which provisions of the agreement relate to either of these subject matters; that it was the task of the trial court to decide whether or not the payments of 40 per cent of the husband's income were solely for the support of the wife and therefore alimony, citing *Hough* v. *Hough,* 26 Cal.2d 605, 615 [160 P.2d 15]; that the evidence showed that all property affected by the agreement was separate property of the husband which he had owned prior to his marriage or acquired thereafter by gift or reinvestment of his separate property; that no community property had been accumulated, the costs of the maintenance of the family having exceeded the husband's earnings; that the wife did not give up any of her separate property, of which she had received more than $100,000 from the husband during marriage, and that therefore the payments involved in these proceedings could serve no other purpose than support of the wife, the support of the children being treated separately in paragraph 9 of the agreement, *supra.*

Whether periodic payments to a wife provided for in an

agreement of the spouses approved by a divorce court have the character of maintenance and support has usually arisen in relation to the question whether the court has power to modify said provisions without the consent of both parties, but the same rules must apply to the termination of the right to such payments in case of remarriage of the wife, the decision of both questions being dependent on the character of the provisions as solely and severably for maintenance and support. ■ The rule is well settled that, if the provisions for support and maintenance have been made an integral or inseverable part of the division of the property of the spouses, and the court in a divorce action has approved the agreement, its provisions cannot thereafter be modified without the consent of both of the parties. (*Dexter* v. *Dexter*, 42 Cal.2d 36, 40-41 [265 P.2d 873].) ■ To take from such periodic payments the character of modifiable alimony it is not essential that the wife has received more or less than her share of the community property and that that fact has influenced the amount of the periodic payments allowed her. ■ ". . . at the time a property settlement is made, the parties may be uncertain as to which of their property is community rather than separate, and they will ordinarily not know how the court in the divorce action will find the facts or how it would, in the absence of an acceptable agreement, exercise its discretion in dividing the property and awarding alimony. The amicable adjustment of these doubtful questions with respect to the property and support and maintenance rights of the parties may alone supply sufficient consideration to support their entire agreement." (*Dexter* v. *Dexter, supra,* at page 43.) ■ If periodic payments to the wife are part of such an integrated bargain and the agreement does not provide expressly or implicitly for their termination on remarriage of the wife, section 139, Civil Code, will not apply to cause such termination.

The recent opinions of the Supreme Court in *Dexter* v. *Dexter, supra,* and its companion cases, *Fox* v. *Fox,* 42 Cal. 2d 49 [265 P.2d 881] and *Flynn* v. *Flynn,* 42 Cal.2d 55 [265 P.2d 865], leave no doubt that on its face the property settlement agreement in this case was such an integrated bargain. The recitals and provisions of said agreement stated in substance hereinbefore taken together demonstrate this so clearly that it is unnecessary to point to any of them in particular. The provisions for the periodic payments are them-

selves completely interlaced with the provisions for disposition of the 40,000 shares of Bradley Mining stock put in escrow, and these shares are a part only of all property disposed of in behalf of the wife, both during the life of the husband and upon his death.

The agreement does not contain any indication that the parties intended the payments in question to terminate on remarriage of the wife; it even contains strong indications to the contrary. In paragraph 4 her remarriage is considered and her right to rent free occupation of the family home then continued on somewhat more burdensome conditions. With respect to the periodic payments from income here involved there is no provision for the case of remarriage. The provision of paragraph 14(a) that the wife will receive by irrevocable testamentary disposition the property in escrow in full discharge of all of the husband's obligations to make further payments to the wife, shows that said payments were not intended as alimony payments automatically terminating on the death of the husband (and on the remarriage of the wife).

The only doubt is caused by the evidence showing, contrary to the recitals of the agreement, that there was no community property involved. Even if we assume without so deciding that such evidence was admissible to clarify the actual financial circumstances to which the agreement related, which may be of importance in determining the character of the periodic payments, a showing that there was no community property did not exclude the possibility that the payments might be part of an integrated bargain so as to prevent them from having the character of alimony only. As we stated before, quoting from *Dexter* v. *Dexter, supra,* any integrated, inseverable agreement of the spouses made for the purpose of amicable solution of dubious questions with respect to property and support and maintenance may deprive the periodic payments contained therein of the character of mere alimony, and no existence or division of community property is essential in that respect. In *Ettlinger* v. *Ettlinger,* 3 Cal.2d 172 [44 P.2d 540], there was an express statement in the property settlement agreement that there was no community property; nevertheless it was held that monthly payments to the wife contained as an integral part in said agreement were not subject to modification by the court.

We conclude that the decision of the trial court was correct, as we consider the payments here involved as an inseverable

part of an integrated adjustment of all property relations of the parties and not as a severable provision for alimony. We therefore need not decide whether such payments should also have continued after remarriage if they had formed part of a similar arrangement lacking the characteristics of alimony, but which was made solely in lieu of alimony waived by the wife, a point not yet decided by our Supreme Court.

Judgment affirmed.

Dooling, J., and Kaufman, J., concurred.

A petition for a rehearing was denied May 21, 1954, and appellant's petition for a hearing by the Supreme Court was denied June 16, 1954.