[Civ. No. 18324. First Dist., Div. Two. June 1, 1959.]

FRANCES (BRADLEY) LANE, Respondent, v. JAMES PARKS BRADLEY, Appellant.

Sullivan, Roche, Johnson & Farraher for Appellant.

Aaron N. Cohen, Sidney Rudy and Ted Finman for Respondent.

DOOLING, J.—Defendant, James Bradley, appeals by a settled statement from the minute order denying his motion to quash a writ of execution and from the order, included in a memorandum opinion, denying his motion to set aside the minute order.

In May 1946, appellant and respondent entered into a separation agreement. Respondent was granted a Nevada divorce decree in June 1946, the decree referring to the agreement and ordering the parties to fully perform all of its provisions. Thereafter, respondent obtained a judgment in the Superior Court in and for the City and County of San Francisco (by Judge Cronin) decreeing that the Nevada decree be established as a judgment of the courts of California and ordering the parties to fully perform all obligations provided for in the Nevada decree. This judgment was affirmed by this court. (*Lane* v. *Bradley*, 124 Cal.App.2d 661 [268 P.2d 1092].)

The settlement agreement, among other things, provided that appellant pay to respondent 40 per cent of his net income commencing January 1, 1947, exclusive of capital gains and losses and distributions out of capital but before deduction of income taxes and charitable contributions, less 1 per cent of such net income for each 1,000 shares of 40,000 shares of certain mining company stock sold pursuant to provisions of the agreement. None of these shares has been sold.

To enforce the 40 per cent payment, respondent instituted a contempt proceeding. The trial court (Judge Sweigert) found that the sum of $46,900 was due and owing to respondent and on August 26, 1955, entered an order finding appellant to be in contempt for failure to pay this amount. On November 10, 1955, the court made a further order incorporating the August 26 order and setting forth the manner by which appellant could be purged of his contempt. It was ordered that if appellant failed to so purge his contempt he should be imprisoned. A writ of certiorari was issued by the Supreme Court for the purpose of reviewing the contempt order. The Supreme Court found that the evidence supported the trial court's interpretation of the settlement agreement stating that

if there is conflicting extrinsic evidence ". . . the court on appeal will adhere to the interpretation placed by the trial court on the writings and conduct of the parties." (*Bradley* v. *Superior Court*, 48 Cal.2d 509, 516 [310 P.2d 634].) However, the court held that the agreement was a contract for the adjustment of property rights and " [i]nclusion of such a contract in a judgment of divorce may furnish a basis for subsequent proceedings leading to issuance of a writ of execution but cannot support a commitment to imprisonment for failure to pay the judgment debt." (48 Cal.2d p. 521.) It was held that " [f]or the reasons above stated, the order holding petitioner in contempt is annulled." (P. 523.)

Respondent then filed an affidavit for the issuance of a writ of execution for moneys due on the California judgment (hereinafter referred to as the Cronin judgment). On July 1, 1957, an ex parte order was obtained for the issuance of the writ (Judge Sapiro). (The writ was issued commanding the sheriff to satisfy the amount due and owing, $61,033.38.) Appellant moved to quash the writ and after oral argument this motion was denied. In the minute order denying the motion to quash Judge Molinari stated: "The court finds that there is herein an *ascertainable judgment* in the sum of $46,900.00 rendered by Judge William T. Sweigert as of August 26, 1955 . . ." After deducting a credit for money paid by appellant and adding accrued interest to July 1, 1957, the writ of execution was amended to the sum of $36,511.01.

Appellant moved to set aside this minute order and respondent moved to modify it to strike the paragraph providing that the judgment was not ascertainable with respect to sums accruing after August 26, 1955 (the date of the Sweigert proceedings).

By a memorandum opinion dated January 3, 1957, these motions to set aside and to modify were denied. Appellant then sought a writ of mandate or "other appropriate relief" from this court compelling the superior court to strike the minute order and memorandum opinion. The petition was opposed on the grounds that these orders could not be reviewed by extraordinary writ. This court denied appellant's petition and on February 3, 1958, appellant filed a notice of appeal from the minute order and the memorandum opinion.

■ Appellant contends that the annulment of the contempt order voided the entire proceedings before Judge Sweigert and therefore the fact determinations therein made were voided.

We are satisfied with the correctness of this argument. The annulment of the contempt order by certiorari was a determination by the Supreme Court that Judge Sweigert was acting without or in excess of jurisdiction in making the order of contempt. (*Hume* v. *Superior Court,* 17 Cal.2d 506, 512 [110 P.2d 669]; *Tripp* v. *Tripp,* 190 Cal. 201 [211 P. 225].) The order made by Judge Sweigert determining the amount then due under the Cronin judgment (which was accepted by Judge Molinari as an "ascertainable judgment") was made in the contempt proceedings which were inaugurated by the plaintiff in the Cronin action by the filing of an affidavit charging contempt. (Code Civ. Proc., § 1211.) It was made as a step in the trial to determine whether appellant was guilty of the contempt as charged. (Code Civ. Proc., §§ 1217-1218.) It is clear that since the trial court was without jurisdiction to punish appellant for contempt it was equally without jurisdiction to hear the contempt proceedings and hence had no jurisdiction to hold the hearing in which the amount then owing was determined. The affidavit charging contempt conferred no jurisdiction on the court and for that reason every act of the court purported to be taken pursuant to the jurisdiction erroneously assumed to have been conferred on the court by the filing of the affidavit charging contempt was equally without jurisdiction and therefore a nullity. This conclusion necessitates a reversal.

 Appellant also argues that the Cronin judgment being for a percentage of net earnings is not for a sum certain and hence will not support execution in any event. (*Bank of America* v. *Standard Oil Co.,* 10 Cal.2d 90, 93 [73 P.2d 903]; *Feldmeier* v. *Superior Court,* 12 Cal.2d 302, 306-307 [83 P.2d 929, 119 A.L.R. 927]; Code Civ. Proc., § 682.) Respondent cites cases approving the enforcement by execution of alimony and support decrees providing for future monthly payments in fixed amounts. (E.g. *Foust* v. *Foust,* 47 Cal.2d 121 [302 P.2d 11]; *Di Corpo* v. *Di Corpo,* 33 Cal.2d 195 [200 P.2d 529].) These cases are not determinative of the question here presented since a certain amount named in the judgment itself becomes due under the judgment with the passage of each month. Here the judgment fixes no amount but it does fix a precise formula under which the amount may be definitely ascertained. The question therefore is whether such amount may be determined by proceedings taken for that purpose in the action in which the judgment is entered and when the amount is so fixed execution may be ordered in that determined

amount, or whether the plaintiff in that action is relegated to an independent action to determine the amount accrued.

The law abhors circuity of action and where the judgment, as here, contains a precise formula by which the exact amount accrued thereunder at any time may be definitely ascertained we can see no good reason why the court in the same action may not in an appropriate proceeding taken for that purpose ascertain the amount then due under the formula and order execution to issue for that amount. "That is certain which can be made certain" (Civ. Code, § 3538) and applying this settled axiom the judgment herein is certain since the amount due under it can be made certain at any time by applying the formula contained in the judgment itself. In *Feldmeier* v. *Superior Court, supra,* 12 Cal.2d 302 (a case cited and relied on by appellant) at page 307 the court suggests: "Only after the liquidation plan has been carried out and the court *makes a further order fixing a deficiency* for which the depositary is liable will the plaintiffs have a judgment upon which a writ of execution may issue." (Emphasis ours.) And in *Bradley* v. *Superior Court, supra,* 48 Cal.2d at page 521, the Supreme Court said of this very judgment: "Inclusion of such a contract in a judgment of divorce may furnish a basis for subsequent proceedings leading to issuance of a writ of execution. . . ." *Cf. Knox* v. *Knox,* 129 Cal.App.2d 795 [277 P.2d 854].

Appellant argues that such a holding would deprive him of the right to a jury trial in determining the amount due. But the ascertainment of the amount due would require an accounting which invokes the equitable powers of the court (*Bardwell* v. *Turner,* 219 Cal. 228, 230 [25 P.2d 978]; *Kritzer* v. *Lancaster,* 96 Cal.App.2d 1, 6 [214 P.2d 407]) in which there is no right to a jury trial (29 Cal.Jur.2d, Jury, § 7, p. 485).

The orders appealed from are reversed.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied July 1, 1959.