[Civ. No. 36304. Second Dist., Div. One. Dec. 30, 1970.]

PINECREST PRODUCTIONS, INC., et al., Plaintiffs and Respondents, v. RKO TELERADIO PICTURES, INC., Defendant and Appellant.

**8**

---

## Counsel

Fendler & Fendler, Harold A. Fendler, Shirley Smith and Michael B. Wolf for Defendant and Appellant.

Laurence M. Weinberg and Marion T. Weinberg for Plaintiffs and Respondents.

---

## Opinion

**LILLIE, J.**—This is an appeal from an order directing issuance of a writ of execution in each of the above consolidated actions which arose out of the asserted breach of certain agreements for the distribution by defendant of films produced by plaintiffs. It is contended that in neither action was there a money judgment on which interest could be computed or for which execution could properly issue; in the alternative, it is further claimed that plaintiffs were not entitled to any sums assertedly awarded under the judgment since such sums in almost their entirety were later paid to plaintiffs' assignees under a stipulation and interpleader judgment subsequent to the determination in the original or main actions.

The main actions, three in number,[1] were commenced on April 20, 1959, and later consolidated for trial. Therein plaintiffs sought to enforce their purported rescission of the distribution agreements with defendant and damages for breach of contract, an accounting, injunctive relief and a declaration that defendant had breached its agreement in several particulars. Defendant cross-complained for breaches of the contract by plaintiffs,

---

[1]Plaintiff in the third action, Film Productions, Inc., is not a party to this appeal.

damages and recovery of attorney fees and costs. The trial court concluded that defendant had committed no material breaches of the agreements, that plaintiffs had no right to rescind the agreements, that plaintiffs had breached the agreements (as alleged by defendant) in that they had prevented defendant from distributing the films for television exhibition, and that defendant had been damaged thereby; the court, however, declined to assess any damages. The foregoing determinations were carried into the judgment which declared that plaintiffs' attempted rescission was a nullity and extended defendant's exclusive right to distribute the films for periods equal to the duration of plaintiffs' interference with distribution efforts, commencing upon the entry of final judgment. The judgment also ordered certain accounting adjustments between the parties, refused to order the accounting sought by plaintiffs and adopted the accountings rendered by defendant as of July 29, 1961. While still other adjudications were made, this appeal is concerned primarily with the above portions of the judgment which, more than two years after trial, was entered on June 17, 1964. An unsuccessful appeal by both sides followed, the judgment being affirmed by another division of this court on March 26, 1968, in an opinion certified for nonpublication.

On June 21, 1968, after the affirmance of the judgment, plaintiffs made the instant motion for a writ of execution. It was based on the claim that sums were due plaintiffs upon the accountings previously adopted by the court under its judgment (par. 7). The motion was resisted on the grounds renewed on this appeal, namely, that the judgment was not one for money and that defendant had received notices from certain third parties of assignments of interests to them in the amounts claimed by plaintiffs; in this latter regard, defendant additionally requested that plaintiffs' motion be determined by interpleader with all interested parties, including the assignees, before the court. At defendant's request, hearing of the motion was continued by minute order reciting, in pertinent part, that on the continued date the parties should be prepared to present evidence of (1) the amounts due between plaintiffs and defendant as of July 29, 1961, in accordance with paragraph 7 of the judgment, (2) the amounts accruing between July 29, 1961, and the present and (3) claims filed with defendant against plaintiffs' interests. When the matter was again called for hearing, a further continuance was ordered to August 26, 1968. Meanwhile, on August 23, 1968, defendant filed an action in interpleader. The complaint alleged plaintiffs' application in the main actions for the issuance of a writ of execution, the receipt by defendant of notices of assignments from seven parties (all named defendants in interpleader), the risk imposed on defendant in the main actions of multiple liability for the same obligation, and defendant's willingness to interplead the sum of $108,399.86,

admitted to be due. When plaintiffs' motion for issuance of execution again came on for hearing, defendant's counsel informed the court of the interpleader action offering an oral stipulation that defendant would deposit $53,444.13 for the account of plaintiff Alpine and $55,035.39 for the account of plaintiff Pinecrest to be paid to the respective parties (including plaintiffs' assignees) entitled thereto pursuant to a written stipulation to be filed in such action. Such sums represented their share of the proceeds, accrued as of June 30, 1968, derived from the distribution of the motion pictures in question. (Of the total sum stipulated to be paid, however, less than $8,000 was allocated to plaintiffs here.) The above sums, it was understood, represented principal only.[2] Thereafter a written stipulation was filed and an order made thereon, and defendant made the payments provided for therein. As drawn and executed, the written stipulation (dated October 15, 1968) released defendant from all liability under the assignments theretofore served on it by the several assignees. The same was not true, however, of plaintiffs here and two other defendants in the interpleader action; payment as to them, it appears, was expressly made subject to (1) the payment of any gross receipts from the distribution of the films after June 30, 1968, and (2) such determination as the court should make with respect to additional sums of interest due and owing to said defendants as of June 30, 1968.

The above order having removed all persons, other than plaintiffs and two others, from the interpleader action, counsel (Laurence M. Weinberg) for the parties thus excepted, thereafter undertook the preparation of pleadings to bring to issue the remaining matters requiring resolution, specifically plaintiffs' right to interest. In the course of his research he concluded, after examination of a cited California decision,[3] that the court in the interpleader action had no jurisdiction to determine the right of plaintiffs to receive interest; the above matters are set forth in a declaration by Mr. Weinberg, which also states that he communicated such conclusion to defendant's counsel. Thereafter, on behalf of the remaining defendants in the inter-

---

[2] A partial transcript of the hearing reveals the following: "MR. WEINBERG [Plaintiffs' counsel]: . . . It will further be stipulated that the question of interest claimed by the plaintiffs will be reserved for determination by the Court in the interpleader action, and we are accepting that stipulation, your Honor. . . . [I]f the stipulation is filed and the money deposited in accordance with the stipulation prior to [October 21, 1968] then these motions for issuance of a writ of execution will be dismissed without prejudice." "MR. FENDLER [Defendant's counsel]: Stipulation of continuance, however, being with full reservation of rights as to jurisdiction of this Court previously stated in our initial statement to the Court this morning."

[3] It is held in *Conner* v. *Bank of Bakersfield,* 183 Cal. 199 [190 P. 801] that "Interest on amounts deposited and any right to damages for detention of property so delivered, or its value, ceases to accrue after the date of deposit or delivery." (28 Cal.Jur.2d, Interpleader, § 18, p. 460.)

pleader action, he moved the court for relief from those portions of the stipulation which included an injunction prohibiting them from proceeding with their application for execution in the main action. An appearance was made by defendant's counsel, the motion was granted, and plaintiffs subsequently renewed their application for the issuance of the writ.

As thus renewed, the motion included interest commencing on September 1, 1964, and accrued to the date of the hearing, November 4, 1969.[4] The mathematical computation as to both principal and interest is set forth in annexed schedules, attached to declarations of plaintiffs' counsel, and is based upon defendant's own accountings. No challenge has been made to the accuracy of the above computation which shows interest due plaintiffs in the sum of $16,265.27 (Alpine) and in the sum of $16,359.13 (Pinecrest).

■ While the judgment in the main actions did not provide for interest, it is settled that such omission does not defeat the interest claims now asserted. Thus, "It was not then nor has it ever been necessary for the judgment to contain a direction for payment of interest; the obligation follows automatically. [Citations.]" (*Housing Authority* v. *Arechiga,* 203 Cal.App.2d 159, 161 [21 Cal.Rptr. 464].) Otherwise stated, "[I]t is 'a simple, elementary thing that where one party deprives another party of money which is rightfully theirs, pursuant to court order, it bears seven percent interest from the date due.' " (*Howard* v. *Howard,* 142 Cal.App.2d 222, 225 [298 P.2d 48].) The above principle governs even when, as here, the judgment creditor had made assignments duly brought to the attention of the judgment debtor. (*Rogers* v. *Springfield Fire etc. Ins. Co.,* 92 Cal. App. 537 [268 P. 679].) In *Rogers* it was contended that no interest should accrue until the amount of an assignment (as well as a garnishment) was ascertained; the court concluded that in such circumstances there was no merit to the claim that appellant would be penalized by being compelled to pay interest because it "could have avoided paying interest or paying more than once by depositing the money in court . . . and interpleaded and let the different claimants adjudicate the differences between themselves." (P. 542.) To the same effect is *Rabinowitch* v. *Cal. Western Gas Co.,* 257 Cal.App.2d 150, 161 [65 Cal.Rptr. 1], citing *Rogers* and *Conner* v. *Bank of Bakersfield, supra.* Defendant attempts to distinguish the case last cited (involving a lease) by asserting that it does not involve the issue of

---

[4]No interest was claimed for the period prior to September 1, 1964, for this reason: Paragraph 3 of the judgment in the main action (entered on June 17, 1964) determined that plaintiffs' attempted rescission of the distribution agreements was of no effect; since no appeal was taken by plaintiffs from that portion of the judgment, plaintiffs on September 1, 1964, made demand of defendant in writing for all proceeds derived from such agreements, thus resuscitating the claim which their attempted rescission had stayed.

interest on a money judgment; but just as a lease is a contract for the hiring of property, a judgment is also "a contract upon which the parties may maintain a separate action between themselves." (*Miller* v. *Murphy,* 186 Cal. 344, 347 [199 P. 525].) As further stated in *Miller,* 186 Cal. 344, at page 347: " 'The judgment upon which the action was brought was a contract for the payment of a sum of money, evidenced by the record of a court. The debt secured by it differs in no manner from a simple contract debt. . . .' "

■ This brings us to defendant's first point that the trial court in the main actions did not enter a judgment for money; as further pointed out in support of the above claim, "Before an execution may properly issue the judgment must be for money and the amount due and the persons to whom payable must be determined with exactness. [Citations.]" (*McKay* v. *Coca-Cola Bottling Co.,* 110 Cal.App.2d 672, 677 [243 P.2d 35].) It follows, says defendant, that since the judgment in question simply adopted (with minor corrections) its accountings rendered as of July 29, 1961, it is not within the ambit of the governing rule reiterated in *McKay.* Such contentions must be viewed in the totality of the circumstances. The judgment, being a contract, "a construction given the contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, when reasonable, be adopted and enforced by the court." (*Woodbine* v. *Van Horn,* 29 Cal.2d 95, 104 [173 P.2d 17].) Thus, it appears that the interpleader action was prompted by plaintiffs' application for the writ of execution; specifically, paragraph 18 of the complaint in interpleader alleges that "Plaintiff desires to pay said sum of $108,399.86 and is ready and willing to pay said sum into this Court or to any person whom this Court may designate upon being relieved of liability to the defendants, and each of them, for and on account of all sums due and owing from plaintiff to defendants Alpine and Pinecrest, and each of them . . . for or in connection with the distribution by plaintiff of said motion pictures." Such allegation on its face belies the claim that the judgment did not call for the payment of money. ■ Too, it may not properly be argued by defendant, as was done below, that the same principle should control the right to interest in the main action as governs the same claim in the action in interpleader. Section 386, Code of Civil Procedure (relating to interpleader), provides in pertinent part that "Any interest on amounts deposited and any right to damages for detention of property so delivered, or its value, shall cease to accrue after the date of such deposit or delivery." We know of no statute which so limits the accrual of interest otherwise.

■ Additionally, while plaintiffs in the main actions had sought an accounting under the distribution agreements, the trial court determined

that certain adjustments should be made in defendant's accountings and, as so adjusted, would correctly reflect the status of the accounts between the parties. Manifestly, when one is required to account, he is required to make payments shown to be due on the accountings; otherwise, plaintiffs here would have to sue defendant again on the identical accountings in order to enforce collection of the sums due them. As stated in *Lane* v. *Bradley,* 171 Cal.App.2d 27, 31 [339 P.2d 583]: "The law abhors circuity of action and where the judgment, as here, contains a precise formula by which the exact amount accrued thereunder at any time may be definitely ascertained we can see no good reason why the court in the same action may not in an appropriate proceeding taken for that purpose ascertain the amount then due under the formula and order execution to issue for that amount. 'That is certain which can be made certain' (Civ. Code, § 3538) and applying this settled axiom the judgment herein is certain since the amount due under it can be made certain at any time by applying the formula contained in the judgment itself." In the case at bar, the accounting statements were received in evidence, as were the distribution agreements upon which they were based; all of these documents were thereafter specifically referred to in paragraph 7 of the judgment. Conjunctively, they properly constitute the formula referred to in *Lane,* and, indeed, the same formula was followed by defendant itself in determining the amount then due in its interpleader action.

In conclusion, it follows that by reference to the documents specifically designated in the judgment, a determination can validly be made of the amounts due thereunder. ■ Such "merger" has judicial sanction: "When an agreement has been incorporated into a decree, it is as effectively a part thereof as if recited therein *in haec verba.*" (*Foust* v. *Foust,* 47 Cal.2d 121, 123 [302 P.2d 11].) Pertinent here are these additional statements in *Foust:* "Execution has been defined as 'a process in an action to carry into effect the directions in a decree or judgment.' [Citations.]. . . . While the decree should state with certainty the amount to be paid [citations], it is sufficient if the amount may be definitely ascertained by an inspection of the record. [Citation.]" (P. 124.) The *Foust* case is of further interest because no reliance is placed on *McKay* v. *Coca-Cola Bottling Co., supra,* 110 Cal.App.2d 672 (cited by defendant in this proceeding) since such decision is referred to in one of the dissenting opinions therein filed (p. 129).

■ Likewise devoid of merit is defendant's remaining point that plaintiffs' assignments of distribution proceeds divested them of all rights pertaining thereto, including any claims to interest on the amounts due. The simple answer to this last contention is that such assignments related to the right to receive proceeds from the motion pictures in question, not of

plaintiffs' interests in the judgment. Reference again must be made to the interpleader action and the stipulation therein entered into; prepared on the stationery of defendant's counsel, it recites that a certain named assignee claims to be entitled to a designated sum "payable out of any sums due or owing from plaintiff [in interpleader] to defendants [plaintiffs in the main action], or either of them, for or in connection with the distribution of said motion pictures pursuant to a written agreement dated August 20, 1964 between each of said defendants [plaintiffs in the main action] and defendant [assignee]." Too, reference to the findings (No. 43) and the conclusions of law (No. 24) discloses that the trial court likewise adhered to the view that the assignments related solely to plaintiffs' interest in and to their share of the proceeds of the pertinent distribution agreements. If the trial court had intended that plaintiffs were not to have the benefit of the judgment, its judgment should have so provided; instead, it adjudged that future accountings be rendered to plaintiffs. In short, it cannot be claimed that plaintiffs were not the proper parties to bring this action; their status as such was recognized by the court in its judgment.

Finally, the claim is made by defendant that plaintiffs are estopped to rely on the judgment by virtue of certain conversion actions filed prior to the date such judgment became final. We deem this argument wholly collateral to the issue heretofore determined and, therefore, untenable.

The order is affirmed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied January 25, 1971, and appellant's petition for a hearing by the Supreme Court was denied February 24, 1971.