Filed 9/30/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

<table>
<tr><td>
NIMACHIA HERNANDEZ,<br><br>
     Plaintiff, Cross-defendant and<br>
     Appellant,<br><br>
v.<br><br>
DAN SIEGEL et al.,<br><br>
     Defendants, Cross-Complainants<br>
     and Respondents.
</td><td>
A139653<br><br>
(Alameda County<br>
Super. Ct. No. RG11586724)
</td></tr>
</table>

Attorneys Dan Siegel and Ann Weills represented Nimachia Hernandez in a successful employment discrimination lawsuit in which attorney fees and costs were awarded, pursuant to Government Code section 12965.[1]  The total amount of the fee award, plus accrued interest, was paid directly to Siegel's law firm by the defendant in the litigation.  When the interest was not disbursed to her, Hernandez sued Siegel, Weills, and their law firm, Siegel & Yee (collectively respondents), alleging causes of action for breach of fiduciary duty and intentional tort.  The trial court was ultimately asked to determine whether Hernandez or her attorneys were entitled to the interest paid on the attorney fees, as well as the costs awarded.  The trial court concluded respondents, rather than Hernandez, were entitled to both.  Hernandez appeals.  We affirm.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In September 2005, Hernandez retained respondents to represent her in an employment discrimination suit, brought under the California Fair Employment and

---

[1] Government Code section 12965, subdivision (b), provides in relevant part:  "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs, including expert witness fees."

1

Housing Act (FEHA; Gov. Code, § 12900 et seq.), against the Regents of the University of California (Regents). Hernandez and Weills signed a fee agreement (Fee Agreement), which provides in relevant part:

"2. Attorneys' fees. Except as indicated below in paragraphs 4 and 5, we agree that you will not pay us anything for our time unless we are successful in this matter, either at trial or through settlement. . . . If you are successful in this matter through litigation or settlement, we will be paid attorney's fees as follows: The greater of: (1) Attorneys' fees specifically awarded by the court or through settlement; or (2) 40 percent of the net recovery (including attorneys' fees awarded by the court or through settlement), after payment of the amounts described in paragraph 3 below. Please note that these terms are not established by law but are subject to negotiation between you and us.

"3. Costs. Our firm will advance all out of pocket costs in this litigation, such as filing fees, deposition costs, witness fees, expert consultant fees, jury fees, travel costs, etc. If this matter is ultimately settled, our firm will be reimbursed from the settlement proceeds for all costs incurred prior to the calculations described in paragraph 2.

"4. Discharge of counsel. You may discharge us as your counsel at any time. However, in the event you do so prior to the resolution of your case, this Agreement shall be transformed from a contingent fee agreement into an hourly fee agreement and you will be liable to us for our work on the case at our regular hourly rates. . . .

"5. Lien for Attorney's Fees and Costs. You further agree that our firm will have a lien for our attorney's fees and litigation costs against the ultimate settlement or judgment in your lawsuit . . . . This means that you authorize and agree that our outstanding bill for fees and costs must and will be paid from the settlement or judgment in your case, whether or not we are your counsel at the time the matter is finally resolved. [¶] . . . [¶]

"7. Execution of Documents. You agree that we have the authority to execute any and all pleadings, claims, settlements, drafts, checks, compromises, releases, dismissals, deposits, orders, and other papers which you could properly execute, and to receive on

2

your behalf any monies or other things of value to which you may be entitled because of any judgment recovered or any settlement reached in connection with the claims covered by this Agreement."

The Regents served Hernandez with an offer to compromise, pursuant to Code of Civil Procedure section 998,[2] in the amount of $300,000 plus reasonable attorney fees, costs, and expenses. Hernandez did not accept the offer, and the matter proceeded to a jury trial.

The jury awarded Hernandez $266,347 in damages. Hernandez filed a motion for injunctive relief, seeking reinstatement or front pay in lieu of reinstatement, which was denied. Judgment was entered. Motions to tax costs and a motion for attorney fees were filed.[3] In an order dated September 2, 2010 (Order Granting Costs and Fees), the trial court awarded "[p]laintiff" $623,908.12 in attorney fees and $26,932.84 in costs. Because the jury awarded Hernandez less than what the Regents had previously offered, the Regents were also awarded $83,414.25 in costs and expert witness fees, pursuant to section 998, subdivision (c).

Hernandez, represented by new counsel, filed appeals from both the judgment and the Order Granting Costs and Fees, but only challenged the trial court's denial of reinstatement or front pay in lieu of reinstatement, the amount of attorney fees awarded, and the costs granted to the Regents pursuant to section 998. Division Four of this court affirmed both the judgment and the Order Granting Costs and Fees. (*Hernandez v. Regents of the University of California* (Dec. 12, 2011, A129427, A130063) [nonpub. opn.].)

While the appeals were pending, Siegel received a check from the Regents made out to both Hernandez and Siegel & Yee, in the total amount of $658,606.91. Although initially there was some disagreement regarding whether the check included costs, it is

_____

[2] Undesignated statutory references are to the Code of Civil Procedure.

[3] The moving papers are not included in the record. However, the motion for attorney fees was apparently filed by respondents on Hernandez's behalf.

now undisputed that the check represented approximately $623,908 in attorney fees and approximately $34,699 in postjudgment interest on those fees. Siegel endorsed the check, by signing Hernandez's name in addition to his own, and deposited the funds in the firm's client trust account. The Regents also issued a check to Hernandez directly for $194,458, which represented the amount of the jury verdict plus interest, minus the Regents' recoverable expert fees and costs. The Regents have yet to pay the costs portion of the judgment.

When respondents refused Hernandez's request to disburse the fees and interest to her, she filed suit against respondents, alleging causes of action for breach of fiduciary duty and intentional tort. Specifically, she alleged, "[Siegel] has signed her name without her consent and has obtained funds awarded to her through court judgment and failed to comply with appropriate legal requirements regarding disclosure and accounting of said funds . . . ." Hernandez initially contended she was entitled to the entire fee award. However, she eventually narrowed her claim to an assertion that she was entitled to the costs yet to be paid by the Regents, as well as any interest on the attorney fees. Respondents filed a cross-complaint alleging that Hernandez had breached the Fee Agreement.

After briefing and a bench trial, the trial court entered judgment for respondents. The court's statement of decision provides: "The terms of the [Fee Agreement] are not ambiguous. The [Fee Agreement] included the term that [respondents] advance all out of pocket costs subject to reimbursement. That term was an important part of the contract. . . . [Hernandez] argued that her obligation to reimburse [respondents'] advance of costs under the [Fee Agreement] would only be triggered if her case settled and would not be triggered if the case went to judgment. [Hernandez's] interpretation of her obligation to reimburse [respondents] for the costs advanced by [respondents] is inconsistent with the plain reading of the [Fee Agreement] and unreasonable. Pursuant to the clear terms of the agreement [respondents] were and are entitled to be reimbursed for all of the costs [respondents] advanced on behalf of [Hernandez]. [¶] . . . [¶] The court finds that [Hernandez] is not entitled to any interest attributable to any delay in the payment of

4

costs or any delay in the payment of attorney's fees. Both the costs and the fees are owed to [respondents] therefore any interest payable because of delay are payable to [respondents]." Hernandez filed a timely notice of appeal.

## II. DISCUSSION

Hernandez contends that the trial court erred in concluding both costs and interest on attorney fees belong to respondents. She raises questions of contract and statutory interpretation, which are generally subject to de novo review. (*Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1505; *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 520 [" 'interpretation of a contract is subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence' "].) She has shown no error.

A.     *Interest on Attorney Fees*

Who owns the postjudgment interest accruing on an attorney fee award in a civil action—the client or her attorneys? That question has not previously been addressed by a California court in any published decision. In claiming she is entitled to interest on attorney fees, Hernandez relies on the language of the Fee Agreement and the Order Granting Costs and Fees. First, Hernandez maintains that the Fee Agreement "controls the case" and that the interest belongs to her because she did not agree, therein, to give interest on fees to respondents. She also contends, "The proper logical analysis in this case is as follows: [¶] 1. Siegel limited himself to an amount AWARDED by the Court. . . . [¶] 2. The Court has never AWARDED interest to Siegel. . . . [¶] 3. Therefore, Siegel is not entitled to the interest on the judgment." She is correct that both the Fee Agreement and the Order Granting Costs and Fees are silent regarding interest. However, we disagree that either document is dispositive.

Absent from Hernandez's briefing is any discussion of the legal basis for postjudgment interest.[4] In *Lucky United Properties Investment, Inc. v. Lee* (2010)

---

[4] In advance of oral argument we asked the parties to be prepared to discuss application of the Enforcement of Judgments Law (§ 680.010 et seq.), particularly sections 680.230, 680.240, and 685.010.

185 Cal.App.4th 125 (*Lucky United I*), we provided an overview of judgments, costs, and interest, which is helpful to our analysis. We begin with that overview.

" 'A judgment is the final determination of the rights of the parties in an action or proceeding.' (§ 577.) There may be, in some circumstances, judgments for or against one or more of several plaintiffs or defendants in a single case (§ 578), but there is always one judgment that determines the rights of any one particular party or parties . . . vis-à-vis another party on the other side of the pleadings . . . . [¶] . . . [¶]

"The principal amount of a judgment is the amount of any damages awarded, plus any costs (including attorney fees) to which the prevailing party may be entitled, less any amounts paid by the judgment debtor. (§ 680.300.) Postjudgment interest accrues on the principal amount of the judgment at the rate of 10 percent per annum. (§ 685.010.) How the costs are added to the judgment, and how interest is calculated, turns on the manner in which those costs were imposed or the purpose for which the costs were incurred.

" . . . As a general rule, the prevailing party may recover certain statutory costs incurred in the litigation up to and including entry of judgment. (§§ 1032, 1033.5.) These costs may include attorney fees, if authorized by contract, statute . . . or law. (§ 1033.5, subd. (a)(10).) Most costs are obtained by filing a cost memorandum, although attorney fees require a separate noticed motion. (§ 1033.5, subd. (c); Cal. Rules of Court, rule 3.1702.) Where costs are established by the judgment, but the amount of the award is ascertained at a later time, the court clerk enters the costs on the judgment after the amount is determined. (Cal. Rules of Court, rule 3.1700(b)(4); *Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 369.) In other words, the amount of the cost award is incorporated into the judgment.

"Interest at the rate of 10 percent per annum accrues on the unpaid principal amount of *the judgment* (§ 685.010), *including the amount of the cost award and attorney fees award* (§ 680.300), as of the date of judgment entry (§ 685.020, subd. (a))." (*Lucky United I, supra,* 185 Cal.App.4th at pp. 136–138, italics added & parallel citation omitted.)

6

It is no surprise that the Order Granting Costs and Fees is silent on the subject of interest. A money judgment automatically accrues interest "by force of law," regardless of whether it explicitly declares as much. (Cal. Const., art. XV, § 1; §§ 685.010, subd. (a), 685.020, subd. (a); *Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 491, 495; *County of Los Angeles v. Salas* (1995) 38 Cal.App.4th 510, 515–516; *Pinecrest Productions, Inc. v. RKO Teleradio Pictures, Inc.* (1970) 14 Cal.App.3d 6, 11.) Postjudgment interest also automatically accrues on any unpaid costs and attorney fee awards. (§§ 680.300 [" 'Principal amount of the judgment' means the total amount of the judgment as entered . . . together with the costs thereafter added to the judgment pursuant to Section 685.090"], 685.090, 1033.5, subd. (a)(10) [costs include attorney fees if authorized by contract, statute, or law]; *Gregory v. State Bd. of Control* (1999) 73 Cal.App.4th 584, 599.) In their appellate briefs, neither Hernandez nor respondents point to any language in the governing statutes that address ownership of interest on fees. Section 685.010, subdivision (a), provides only, "Interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied."

Instead, Hernandez points to the Fee Agreement. She suggests that it is not unreasonable to require an attorney to secure a fee agreement with his or her client that explicitly provides the attorney's entitlement to interest on a fee award. Hernandez contends that California State Bar Committee Formal Opinion, No. 1980-53, is "instructive" on this point. Therein, the Standing Committee on Professional Responsibility and Conduct concluded that an attorney may ethically charge a client interest on past due receivables, provided the client gives informed consent in advance of the charge. This conclusion, which is expressly "not binding upon the courts" (State Bar Formal Opn, No. 1980-53, *supra*, p. 4), has no application in this case where the Regents, not Hernandez, have incurred interest on a judgment by force of law, not as a matter of contractual agreement.

The parties agreed at oral argument that, to resolve this appeal, we must determine the judgment creditor of the fee award. Section 685.010, subdivision (a), provides: "Interest accrues at the rate of 10 percent per annum on the principal amount of a money

*judgment* remaining unsatisfied." (Italics added.) Section 680.230 provides, " 'Judgment' means a judgment, order, or decree entered in a court of this state." Section 680.240 provides, " 'Judgment creditor' means the person in whose favor a judgment is rendered or, if there is an assignee of record, means the assignee of record. Unless the context otherwise requires, the term also includes the guardian or conservator of the estate, personal representative, or other successor in interest of the judgment creditor or assignee of record." The Order Awarding Costs and Fees was a judgment rendered in favor of "[p]laintiff." (§ 680.230) Hernandez implicitly asserts that the client, not counsel, is the "plaintiff."

However, in *Flannery v. Prentice* (2001) 26 Cal.4th 572 (*Flannery*), our Supreme Court considered the question of whether attorney fees awarded under Government Code section 12965 belong to the client or attorney when no contractual agreement provides for their disposition. (*Flannery,* at p. 575.) The court began by analyzing the statutory language. The court observed, "While it is true that section 12965 authorizes fee awards 'to the prevailing party' (§ 12965, subd. (b) . . . ), that language does not unambiguously favor plaintiff. 'The word "part[y]" is reasonably susceptible to more than one interpretation.' [Citation.] 'In the countless procedural statutes in which the term "party" is used, it is commonly understood to refer to either the actual litigant or the litigant's attorney of record. [Citations.] Since that is the ordinary import of the term, that is the meaning we must ascribe to it when used in [a statute], unless the Legislature has clearly indicated a contrary intent . . . .' [Citations.]" (*Flannery,* at p. 578, italics omitted.)

To resolve the statutory ambiguity, the *Flannery* court relied on the intent of the Legislature in enacting FEHA, as well as policy concerns. (*Flannery, supra,* 26 Cal.4th at pp. 579, 583–584.) The court explained: "Attorneys considering whether to undertake cases that vindicate fundamental public policies may require statutory assurance that, if they obtain a favorable result for their client, they will actually receive the reasonable attorney fees provided for by the Legislature and computed by the court. . . . [¶] Because contracts are not always obtainable or obtained and always may be disputed, were we to interpret section 12965 as plaintiff urges, vesting ownership of fees awarded thereunder

8

and not disposed of by contract in the litigant, rather than in counsel, we would diminish the certainty that attorneys who undertake FEHA cases will be fully compensated, and to that extent we would dilute section 12965's effectiveness at encouraging counsel to undertake FEHA litigation. . . . [¶] . . . [¶] Construing section 12965 as vesting ownership of unassigned attorney fees awarded thereunder in counsel rather than the litigant (to the extent fees are not otherwise paid) will, moreover, advance important public policies. Specifically, such a construction will: [¶] a. Encourage representation of legitimate FEHA claimants and discourage nonmeritorious suits [¶] . . . [¶] b. Avoid unjust enrichment [¶] . . . [¶] c. Ensure fairness [¶] d. Address ethical concerns." (*Flannery,* at pp. 583–586, italics omitted.) On the latter point, our Supreme Court agreed that vesting ownership of unassigned fees in the litigant "would implicate in some measure the policy our fee-splitting prohibition is designed to advance."[5] (*Id.* at p. 587.) Accordingly, the court held that, "absent proof . . . of an enforceable agreement to the contrary, the attorney fees awarded . . . belong to the attorneys who labored to earn them." (*Id.* at p. 575.)

*Flannery* did not address postjudgment interest on attorney fees. Nonetheless, its holding is critical. If attorney fees belong to the attorney by default and only belong to the client if an agreement so specifies (*Flannery, supra,* 26 Cal.4th at p. 590), then the trial court's Order Granting Costs and Fees to "[p]laintiff" cannot be read to vest ownership of fees in Hernandez. Furthermore, the Fee Agreement in this case is not silent on the ownership of attorney fees. It specifically makes clear that attorney fees belong to respondents. *Flannery* compels us to conclude that respondents, not Hernandez, are the judgment creditors with respect to the attorney fee award. (*Flannery,* at p. 590; see also *Lindelli v. Town of San Anselmo, supra,* 139 Cal.App.4th at pp. 1509–1510 [following *Flannery* and holding "[a]ttorney fees awarded pursuant to section 1021.5 belong, absent an enforceable agreement to the contrary, to the attorneys"].) By

---

[5] California attorneys and law firms are prohibited from "directly or indirectly shar[ing] legal fees with a person who is not a lawyer." (Rules Prof. Conduct, rule 1-320(A).)

logical extension, interest on the attorney fee award belongs to respondents. (§§ 680.230, 680.240, 685.010; see also *Koszdin v. State Comp. Ins. Fund, supra,* 186 Cal.App.4th at p. 490 ["when a WCAB award specifically provides that attorney fees are to be paid directly to the attorney, any postaward interest that accrues on the attorney fees must also be paid directly to that attorney"].)

Hernandez's reliance on *Hollingsworth v. Lewis* (1928) 93 Cal.App. 526 (*Hollingsworth*) does not convince us to reach a contrary conclusion. In *Hollingsworth*, the plaintiff, who was an attorney, agreed to represent the defendants before the Interstate Commerce Commission (ICC) and secure "refunds" of money collected by railroad companies on certain freight shipments. (*Id.* at pp. 526–527.) In turn, the defendants agreed to pay the plaintiff " '50% of the refunds so secured.' " (*Id*. at p. 528.) Ultimately, the plaintiff sued to recover compensation for the legal services he rendered and obtained 50 percent of both principal—the "money . . . illegally collected from the defendants" by the railroad companies—and money the ICC ordered the railroad companies to pay to the defendants as interest. (*Id.* at pp. 526–527.)

On appeal, the defendants argued that the plaintiff was not entitled to share in the interest under the terms of his contract. (*Hollingsworth, supra,* 93 Cal.App. at p. 527.) The reviewing court construed the word "refunds," as used in the contract executed by the parties, to determine whether that word included both principal and interest, or merely principal. (*Id*. at p. 528.) The court observed, "As the contract was made between an attorney and his client, the ambiguity should be resolved against the attorney and in favor of the client. [Citation.]" (*Ibid*.) "As the defendants never paid any interest to any railroad company, in no proper sense can it be said that any railroad company, by virtue of the [ICC] order . . . , repaid, that is refunded, any interest money." (*Ibid.*, italics omitted.) The judgment was modified to strike the award of interest to the plaintiff. (*Ibid.*)

*Hollingsworth* did not involve statutory postjudgment interest accruing on an award of attorney fees. And, here, it is of little import that contractual ambiguity should

be resolved in favor of the client. As discussed *ante*, accrual of postjudgment interest is controlled by statute, not by contract.

Simply put, nothing in the statutory scheme, case law, or the Fee Agreement directly supports Hernandez's claim that interest on attorney fees belongs to the client, rather than the attorney. Nor does Hernandez explain how the purposes of the postjudgment interest statutes would necessarily be better served by her interpretation. The purpose of awarding postjudgment interest is to compensate the judgment creditor for the time value of the money until the judgment is paid. (*Lucky United Properties Investment, Inc. v. Lee* (2013) 213 Cal.App.4th 635, 658; *Westbrook v. Fairchild* (1992) 7 Cal.App.4th 889, 893.) Hernandez has offered no reason, other than her general dissatisfaction with the result of the prior litigation, that she should receive a windfall, at the expense of the attorneys who labored on her behalf. (Cf. *Flannery, supra,* 26 Cal.4th. at pp. 585–586; *Lindelli v. Town of San Anselmo*, *supra,* 139 Cal.App.4th at pp. 1512–1513.) It would make little sense to award interest on a fee award to anyone other than the attorney whose labor remains uncompensated. Adopting Hernandez's interpretation would make it more challenging for a FEHA plaintiff to find competent counsel.

In the absence of an agreement establishing the client's entitlement to an attorney fee award, or to any accrued interest, we hold that interest belongs to the attorney who owns the fee judgment upon which interest is accruing.

B.    *Costs*

Next, Hernandez claims that the trial court erred in concluding respondents were entitled to the costs awarded by the Order Granting Costs and Fees. According to Hernandez, respondents agreed in the Fee Agreement to bear Hernandez's litigation costs in the event that the case was litigated successfully. Hernandez points out—albeit in another section of her brief—that the paragraph entitled "Costs" in the Fee Agreement provides only that, *if the matter is settled*, respondents will be reimbursed for advanced costs from the settlement proceeds. Hernandez asserts that, if the case is litigated, "[the Fee Agreement] does not allow costs if there is a fee award."

11

Hernandez relies solely on paragraph Nos. 2 and 3 of the Fee Agreement. But paragraph No. 2 begins with "[e]xcept as indicated below in paragraphs 4 and 5 . . . ." And, in paragraph No. 5, the Fee Agreement provides, "You further agree that our firm will have a lien for our attorney's fees and litigation costs against the ultimate settlement or judgment in your lawsuit . . . . *This means that you authorize and agree that our outstanding bill for fees and costs must and will be paid from the settlement or judgment in your case*, whether or not we are your counsel at the time the matter is finally resolved." (Italics added.)

Hernandez's interpretation of the Fee Agreement cannot be squared with the language italicized above. Furthermore, Hernandez's interpretation of the Fee Agreement would conflict with rule 4-210 of the Rules of Professional Conduct, which provides that an attorney "*shall not* directly or indirectly pay, guarantee, represent, or sanction a representation that the [attorney] or [attorney's] law firm will pay the personal or business expenses of a prospective or existing client . . . ." (Italics added.) The rule does go on to provide, "[T]his rule shall not prohibit [an attorney]: [¶] . . . [¶] (3) From *advancing* the costs of prosecuting . . . a claim or action . . . , the *repayment* of which may be contingent on the outcome of the matter." (Italics added.) Contrary to Hernandez's suggestion, the rule's exception does not make it "entirely permissible for a plaintiff's lawyer to bear the cost of [successful] litigation in a contingency agreement." "Advance," in this context, means "to supply or furnish in expectation of repayment." (Merriam-Webster Online Dict. <http://www.merriam-webster.com/dictionary/advance> [as of Sept. 5, 2014].)

Hernandez has not met her burden to show that the trial court's ruling on costs was in error. (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649–650 ["an appealed judgment is presumed correct, and appellant bears the burden of overcoming the presumption of correctness"].)

### III. DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

12

_____

Bruiniers, J.


We concur:


_____

Simons, Acting P. J.


_____

Needham, J.


A139653

13

Superior Court of Alameda County, No. RG11586724, George C. Hernandez, Jr., Judge.

Eisenberg Law Office and Neil D. Eisenberg for Plaintiff, Cross-defendant and Appellant.

Siegel & Yee and Dan Siegel for Defendants, Cross-complainants and Respondents.